OPINION OF THE COURT
Fuchsberg, J.
We are called upon to decide whether the court of first instance in this case was free to refuse defendant’s request, made pursuant to CPL 60.45 and 710.70, that it submit the voluntariness of defendant’s incriminating statement to the jury when the attack on it was based solely on proof in support of a claim that the police officer to whom it was made failed to advise the defendant of her constitutional rights as required by Miranda v Arizona (384 US 436).[1]
The defendant, Imogene Graham, was arrested in a tavern on Manhattan’s upper West Side by a police officer when a purse containing packets of heroin was found lying on the table at which she had been sitting. As pertinent here, the officer was to testify at trial that he had seen her abandon the purse; but, Ms. Graham, who previously had never been convicted of a crime, took the stand to swear that she had been unaware of the contents of the purse, that it belonged to another young woman, whose name, Teresa Black, was inscribed on the purse, and that it was Ms. Black who had left it on the table.
The officer also testified that, as he was taking Ms. Graham to the station house in his police car, he asked her, “Who are you holding the stuff for?” and that she answered, “No, no, he’ll kill me. He’ll kill me.” Although the officer stated that he had informed Ms. Graham of her other rights before he and she engaged in this colloquy, he also described how he had failed to advise her that she had a right to counsel before she answered any questions, the omission having occurred, as he explained it, because, having “informed her that the court would provide an attorney for her, I assumed she would know what that *147 means”. For her part, defendant insisted that she received no warnings at all before the questioning in the police car and that the officer’s version of the statement she made was inaccurate.
On this record, at the close of defendant’s case, her counsel requested the court to charge the jury on the voluntariness of the statement. He also requested permission to argue the issue during summation. But, although the prosecutor agreed that the Criminal Procedure Law required such an instruction, the Trial Judge, who, in response to a pretrial motion to suppress the statement, earlier had ruled that defendant had knowingly waived her privilege against self incrimination, rejected both applications.
The procedural predicate for defendant’s requests is to be found in CPL 60.45 and 710.70. Together, these govern the admissibility of defendants’ confessions, admissions and other statements. Specifically, CPL 60.45 (subd 2, par [b], cl [ii]) says in so many words that a statement is involuntary when it is obtained from a defendant “by a public servant engaged in law enforcement activity * * * in violation of such rights as the defendant may derive from the constitution of this state or of the United States.” And, in interlocking fashion, CPL 710.70 (subd 3) not only allows a defendant, notwithstanding an adverse pretrial ruling, to attempt at trial to establish that the statement “was involuntarily made within the meaning of section 60.45”, but goes on to provide that “[i]n the case of a jury trial, the court must submit such issue to the jury under instructions to disregard such evidence upon a finding that the statement was involuntarily made” (emphasis added).[2]
*148 In refusing to follow what he acknowledged was the “very literal language of the statute[s]”, the Trial Judge, who had been executive director of the State commission which drafted the Criminal Procedure Law, essentially took the position that the sufficiency of compliance with the dictates of Miranda v Arizona is a question of law, that therefore “the legislature never could have intended” that such an issue be litigated before a jury, that the statutory scheme contemplated only “traditional involuntariness in the sense of duress”, and that, in indicating otherwise, CPL 710.70 represents a “statutory defect”, “a statutory error of almost a typographical nature”.
The voluntariness issue having thus been kept from the jury, which thereafter found the defendant guilty of criminal possession of a controlled substance in the second degree (Penal Law, § 220.18), this was to be the overarching issue on which the judgment entered upon the conviction was reversed and a new trial granted by the Appellate Division. Other than to note the police officer’s concession with regard to the shortfall in his advice to the defendant *149 on her right to counsel, the court’s memorandum for reversal centered on its holding that the statutory language was controlling. On the People’s appeal to us, here by leave of a Judge of this court (CPL 460.20), we now find the Appellate Division’s determination was correct. Our reasons follow.
At the outset, we observe that the enactment of CPL 60.45 on its face would appear to evince a legislative intent to expand the concept of “involuntary statement” beyond its traditional scope. Its predecessor, the old Code of Criminal Procedure (§ 395), excluded from evidence only confessions “made under the influence of fear produced by threats, or * * * made upon a stipulation of the district attorney, that [defendant] shall not be prosecuted therefor”. Assuming the Legislature had chosen to limit itself to these instances of “actual” involuntariness, it need only have enacted paragraph (a) and clause (i) of paragraph (b) of subdivision 2 of the present statute, which cover both the coercive and promissory elements of the code section it replaced. By enacting clause (ii) of paragraph (b), by which statements obtained “in violation of such rights as the defendant may derive from the constitution” were added, the Legislature brought the concept of involuntarily made statements beyond its traditional confines.[3]
Moreover, that the expanded boundary included the kind of involuntariness within which the claim made by the present defendant falls is not without historical support. When CPL 60.45 was enacted in its present form in 1970, it followed two hardly unrelated legal events. One, in 1964, was the United States Supreme Court’s decision in Jackson v Denno (378 US 368), in response to which New York revolutionized its procedure for determining the voluntariness of a defendant’s confession (People v Huntley, 15 NY2d 72). The second, in 1966, was the emphasis the then newly prescribed Miranda warnings placed on deterrence of self incrimination which flows from a defendant’s ignorance of his constitutional rights (Miranda v Arizona, 384 US 436, 478-479, supra).
Significantly, even the Trial Judge in the present case, when he authored the practice commentary “which in 1970 *150 accompanied the newly enacted CPL 60.45, opined that the statute had been rewritten to comprehensively blanket “not only all forms of actual voluntariness (e.g., physical force) but also all forms of what the United States Supreme Court has stamped involuntariness in a legal or constructive sense (e.g., failure to give Miranda warnings)” (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A [1971], CPL 60.45, p 259). That this was no aberrational comment is certified by recourse to the 1968 draft of the proposed section. Its definition of involuntariness, instinct with sensitivity to Miranda, incorporated reference to statements obtained “without first effectively advising the defendant of and according him such rights as he may derive from the constitution of this state or of the United States with respect to the making of a statement” (Seventh Interim Report of NY Temporary Comm on Revision of Penal Law and Criminal Code [1968], p 51). In the end, of course, the Legislature chose not merely the more abbreviated but also the more comprehensive language of the present CPL 60.45 (subd 2, par [b], cl [ii]).
Nor is CPL 710.70 divorced from this history. It codified this court’s Huntley holding, by which, in the wake of Jackson v Denno (supra), New York adopted the so-called “Massachusetts procedure” for determining the voluntariness of a defendant’s confession. Under this procedure, the Trial Judge makes a full determination of voluntariness and submits the confession to the jury only if the statement is found voluntary; in that event, the jury is instructed not to give any weight to the statement unless it finds it voluntary (Jackson v Denno, supra, pp 378-379).[4] More to the point, CPL 710.70’s reference to CPL 60.45 is without *151 limitation or exception. It therefore would distort what it plainly says, were we to selectively apply it only to CPL 60.45 (subd 2, pars [a], [b], cl [i]). Put another way, as written, the statutes mandate that any issues of voluntariness set out in 60.45 may go to the jury.
Thus, even if the statutory history we have recounted were nonexistent, the clarity and unambiguity of the language of both CPL 60.45 and 710.70 would have made it inappropriate to delve into what at times is an ill-defined legislative intent (Department of Welfare of City of N. Y. v Siebel, 6 NY2d 536, 543; McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 71, 76; but see New York State Bankers Assn. v Albright, 38 NY2d 430). This is all the more so because “there is no necessary correlation between what the draftsman of the text of a bill understands it to mean and what members of the enacting legislature understand” (2A Sutherland, Statutory Construction [4th ed, Sands], §§ 48.09, 48.12). When the Legislature enacted the statutes and when the Governor signed them into law, they stood for what their words manifested and not the inner thoughts of a draftsman or adviser. After all, it was the words, not the thoughts which were to “influence the conduct of others” (Gardiner, Speech and Language [Oxford, 1932], p 19). As F. Vaughan Hawkins put it in his classical work on statutory interpretation, while a legal act “originates in intention, it is perfected by expression” (Principles of Legal Interpretation, reproduced in Appendix C, at p 581 of Thayer, Preliminary Treatise on Evidence at the Common Law).
Nor do we deal here with a clerical or typographical error (e.g., People ex rel. French v Lyke, 159 NY 149 [omission of the word “or” rendering subsequent clause of statute meaningless]; People ex rel. Fitch v Lord, 9 App Div 458 [mistakenly referring to the unrelated statutory chapter number “329” instead of “339”]). It would be a matter of reductio ad absurdum to equate the unconfusing substantive mandate of CPL 710.70 with a mechanical inadvertence.
Not deterred by the defendant’s ready rebuttal of the arguments we already have reviewed, the People also press *152 the view that an issue such as police compliance with constitutional rights is not one suitable for a lay jury to decide. Rejecting this denigration of the jury system, the defendant strongly suggests that, if, as in the case before us now, the question is whether a defendant was adequately advised of her rights, the jury can easily be instructed on what Miranda requires, just as it traditionally and regularly is instructed on an endless number of no less subtle legal propositions. Thus analyzed, the role of the jury, of course, is not to pass on rules of law, but merely to decide the questions of fact to which given rules are to be applied.
This is not to say that the present predelictions of the Trial Judge, of the People or of others who share their opinions are to be discounted. So, if they are unhappy with the statutory status quo, if the submission of issues which now go to the jury “seems unwise, unreasonable or undesirable, the argument for change is to be addressed to the Legislature, not to the courts” (People v Kupprat, 6 NY2d 88, 90). And, to this end, it well may be meet for those who subscribe to these criticisms to invite consideration of the subject by the Advisory Committee on Criminal Law and Procedure of the Chief Administrator of the Courts. But, until and unless the cogency of the arguments of those who would amend the statutes is accepted and acted upon by legislative and gubernatorial authority, the laws on the books now “ ‘must be read and given effect as [they were] written by the Legislature, not as the court may think it should or would have written [them]’ ” (Allen v Minskoff, 38 NY2d 506, 511, quoting Lawrence Constr. Corp. v State of New York, 293 NY 634, 639). In sum, ‘“[t]he office of interpretation is to bring sense out of the words used, and not bring a [different] sense into them.’ ’’ (Meltzer v Koenigsberg, 302 NY 523, 525, quoting McCluskey v Cromwell, 11 NY 593, 601-602; McKinney’s Cons Laws of NY, Book 1, §§71, 76; see, generally, Frankfurter, Some Reflections on the Reading of Statutes, 47 Col L Rev 527, 533.)
For all these reasons, the order of the Appellate Division should be affirmed.

. The People also raise a harmless error argument, which we find to be without merit.

. The full texts of CPL 60.45 and 710.70 are as follows:
“§ 60.45 Rules of evidence; admissibility of statements of defendants
“1. Evidence of a written or oral confession, admission, or other statement made by a defendant with respect to his participation or lack of participation in the offense charged, may not be received in evidence against him in a criminal proceeding if such statement was involuntarily made.

“2. A confession, admission or other statement is ‘involuntarily made’ by a defendant when it is obtained from him:

“(a) By any person by the use or threatened use of physical force upon the defendant or another person, or by means of any other improper conduct or undue pressure which impaired the defendant’s physical or mental condition to the extent of undermining his ability to make a choice whether or not to make a statement; or
“(b) By a public servant engaged in law enforcement activity or by a person then acting under his direction or in cooperation with him:
*148 “(i) by means of any promise or statement of fact, which promise or statement creates a substantial risk that the defendant might falsely incriminate himself; or
“(ii) in violation of such rights as the defendant may derive from the constitution of this state or of the United States." (Emphasis added.)
“§ 710.70 Motion to suppress evidence; orders of suppression; effects of orders and of failure to make motion
“1. Upon granting a motion to suppress evidence, the court must order that the evidence in question be excluded in the criminal action pending against the defendant. When the order is based upon the ground specified in subdivision one of section 710.20 and excludes tangible property unlawfully taken from the defendant’s possession, and when such property is not otherwise subject to lawful retention, the court may, upon request of the defendant, further order that such property be restored to him.
“2. An order finally denying a motion to suppress evidence may be reviewed upon an appeal from an ensuing judgment of conviction notwithstanding the fact that such judgment is entered upon a plea of guilty.
“3. A motion to suppress evidence made pursuant to this article is the exclusive method of challenging the admissibility of evidence upon the grounds specified in section 710.20, and a defendant who does not make such a motion before or in the course of a criminal action waives his right to judicial determination of any such contention.
“Nothing contained in this article, however, precludes a defendant from attempting to establish at a trial that evidence introduced by the people of a pre-trial statement made by him should be disregarded by the jury or other trier of the facts on the ground that such statement was involuntarily made within the meaning of section 60.45. Even though the issue of the admissibility of such evidence was not submitted to the court, or was determined adversely to the defendant upon motion, the defendant may adduce trial evidence and otherwise contend that the statement was involuntarily made. In the case of a jury trial, the court must submit such issue to the jury under instructions to disregard such evidence upon a finding that the statement was involuntarily made.” (Emphasis added.)

. The inclusion of “undue pressure which impaired the defendant’s * * * ability to make a choice whether or not to make a statement” is a further indication of a concern that the defendant’s “choice” be an informed one. (CPL 60.45, subd 2, par [a].)

. Under the “New York rule”, as it then was, the Trial Judge made a preliminary determination as to whether the evidence on involuntariness presented a factual conflict. If it did, the Judge received the confession and left it to the jury to decide on its voluntariness. In Jackson v Denno, the Supreme Court held the New York procedure violative of due process because of the danger that other matters pertaining to the defendant’s guilt would infect the jury’s finding on voluntariness. A third approach, the so-called “orthodox rule”, favored by Wigmore, calls upon the Trial Judge alone to decide on the voluntariness of the confession for purposes of admissibility, and, if it went in, allowed the jury to consider voluntariness only as affecting the weight or credibility of the confession (see 3 Wigmore, Evidence [Chadbourn rev, 1970], § 861; see Paone, New Trial Procedure on Confessions in New York, 50 Cornell LQ 461; Hagerty, An Analysis of the Procedures Used to Determine the Voluntariness of Confessions: and a Solution, 11 SD L Rev 70).