OPINION OF THE COURT
Alfred H. Kleiman, J.
Defendant Luis Medina was indicted on two counts of murder in the second degree (Penal Law § 125.25) and other related charges. He was tried and convicted by a jury. Defendant was subsequently sentenced to two consecutive terms of 25 years to life.
Defendant moved to set aside the verdict pursuant to CPL 330.30 (1) upon the ground that the court erred as a matter of law in ruling that it would not submit to the jury the issue as to whether or not the defendant’s right to counsel had attached.
*654 In this case of apparent first impression, I held that the question of whether or not a defendant’s right to counsel had attached under the Rogers-Bartolomeo rule (People v Rogers, 48 NY2d 167 [1979]; People v Bartolomeo, 53 NY2d 225 [1981]) was not a proper subject for a jury’s consideration and accordingly denied defendant’s motion.
HUNTLEY-BARTOLOMEO HEARING
Following a motion to suppress defendant’s statements a pretrial hearing was held before me. Detective William Cutter, an 18-year police veteran, testified that on January 14, 1986, at approximately 12:10 A.M., he was assigned to investigate a double homicide which occurred earlier that evening at 364 East 10th Street in New York County. Canvassing the building, Cutter and his team of detectives learned from defendant’s wife that the defendant, who lived in apartment 1A, had recently been released from prison. Detective Cutter subsequently interviewed the defendant in his apartment. Defendant told Cutter that he had been released from jail on January 13, 1986 at about 3:30 p.m. because the complainant in that case "had not shown up four times and he was let go”. Detective Cutter further testified that based on his experience, he interpreted the defendant’s statement to mean that the case was dismissed "and over with”. The defendant then gave Cutter an account of his whereabouts that evening.
Later that morning the detectives brought defendant to the 9th Precinct for further questioning. It was conceded that the defendant was in custody at this time. After having his Miranda rights read to him, defendant gave a full incriminating statement to the police. Cutter then contacted the Manhattan District Attorney’s office. During the conversation with an Assistant District Attorney the subject of whether the defendant had any open case was raised and Detective Cutter informed the assistant that the defendant had had a case that was dismissed. Arrangements were then made with the Assistant District Attorney to take a video statement from the defendant. Detective Cutter then told the defendant that an Assistant District Attorney was en route to the precinct. It was at this point that defendant said he didn’t want to speak to anybody without an attorney present.
Detective Cutter testified that the first time he learned that defendant did have an open case was on January 17th, when this case was presented to the Grand Jury. In fact, the open *655 case on which he was represented by counsel had been adjourned on January 13th to February 3, 1986.
At no time during the investigation prior to the interrogation of the defendant did any police officer assigned to the case obtain or request a NYSIS sheet or attempt to ascertain the status of the case that Detective Cutter assumed had been dismissed. As stated in People v Bertolo (65 NY2d 111, 119 [1985]), a progeny of Rogers-Bartolomeo "[a]bsent some actual knowledge, however, of either defendant’s representation by counsel or the pendency of prior charges, the police have no affirmative duty to cease their questioning or inquire whether defendant has an attorney.”
I found Detective Cutter’s testimony to be credible. There was no evidence that "actual knowledge of the pending charge[s] was deliberately overlooked or avoided by the police” (Bertolo, supra, at 118) or any other evidence of bad faith on the part of Detective Cutter. (See, People v Fuschino, 59 NY2d 91, 98 [1983].) Nor was there any duty to make any further inquiry because the detective believed he had a prior involvement with the criminal justice system. (People v Washington, 111 AD2d 418 [2d Dept 1985].) Consequently, this court declined to infer knowledge of prior representation. On the contrary, this court was satisfied that it was not unreasonable, under the circumstances within his knowledge and based upon his general experience, for the detective to believe the earlier case had been dismissed.
Having also found that the People had proven beyond a reasonable doubt that Miranda warnings were given and understood and that the right to counsel had not been invoked until after the interrogation by Detective Cutter, the motion to suppress the statements was denied.[1]
THE ISSUE
During the trial a motion in limine was made addressed to the issue as to whether or not the court would submit the Bartolomeo issue to the jury. Essentially defendant argued that pursuant to CPL 60.45 (2) (b) (ii) a statement is involuntarily made when it is obtained "by a public servant * * * in violation of such rights as the defendant may derive from the constitution of this state or of the United States” and that a violation of the right to counsel is such a constitutional right.
*656 Accordingly, counsel argued that pursuant to CPL 710.70 (3) the court "must submit such issue to the jury under instructions to disregard such evidence upon a finding that the statement was involuntarily made” (emphasis mine).[2] Put another way defendant sought a ruling that the issue as to whether or not Detective Cutter knew, believed or had reason to believe that the defendant was represented by counsel in another pending case be submitted to the jury. (Defendant did not request that the Miranda issue be submitted to the jury.) This court ruled that this issue would not be submitted to the jury and based upon this determination evidence relating to the alleged then pending case was not introduced. Defendant contends that this ruling was contrary to the holding of People v Graham (55 NY2d 144 [1982]).
In People v Graham (supra) the Court of Appeals expanded the concept of involuntariness from the then traditional sense (i.e., duress, coercion, physical abuse, etc.) to statements deemed involuntary when taken in violation of Miranda v Arizona (384 US 436 [1966]) as issues which must be submitted to the jury. Thus, the sole issue decided in Graham was that the trial court was required to submit to a jury any question as to whether defendant’s confession was obtained in violation of his rights under Miranda.
Judge Bellacosa in his Practice Commentary to CPL 710.70 *657 states: "Essentially it [Graham] holds that this section, with CPL 60.45, gives defendants two bites at either kind of involuntariness apple in that both the traditional involuntariness claim of extracted statements and the modern technical Miranda variety are vulnerable to pre-trial suppression attack as well as trial jury resolution.” (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 710.70, at 181.) Even this narrow expansion of the definition of involuntariness was found troublesome by 3 of the 6 Judges participating in the Graham decision. (See, supra, at 153 [concurring opn of Wachtler, J.].)
The Graham decision is therefore not dispositive of the issue that was presented to this court, to wit, are statements taken in violation of the right to counsel "involuntarily made within the meaning of section 60.45.” (CPL 710.70 [3].) This court was and continues to be frank to state that a literal reading of the two statutes and language (but not the rationale) of the opinion of Judge Fuchsberg in Graham (supra) would mandate a conclusion contrary to that reached by this court.
In the first place, however, the legislative history of CPL 60.45 indicates that it was the Legislature’s intent to expand the concept of "involuntarily made” statements beyond the traditional due process standard only to Miranda, the Fifth Amendment standard. (See, People v Graham, supra, at 149-150.) In fact the original draft of what is now CPL 60.45 limited its application to either traditional involuntariness or to Miranda.
In 1967 the Temporary Commission on Revision of the Penal Law and Criminal Code proposed to amend section 395 of the Code of Criminal Procedure by replacing it with section 30.80. Subdivision (2) (f) of that section read "Without first effectively advising the defendant of such rights as he may derive from the constitution of this state or of the United States with respect to the making of a statement”. (Proposed Code Crim Pro § 30.80 [2] [f], 1967 pamph, at 75.) The staff comment to that section noted that "Paragraph (f) is chiefly designed to outlaw admissibility of any statement obtained in the absence of the kind of warnings declared by the Supreme Court of the United States to be essential to valid use thereof against the defendant pursuant to the federal Constitution”. (Id., at 76.)
Although the language of that proposal was not enacted, the 1969 proposal, CPL 60.45 in its current form, was enacted as *658 part of the new CPL which went into effect in 1971. While there is no staff comment accompanying the 1969 bill (see, Proposed Code Crim Pro § 60.45, 1969 pamph, at 48-49), Richard Denzer, who served as executive director of the Temporary Commission, in his original Practice Commentary to CPL 60.45 stated that subdivision (2) (b) (ii) "is designed to accommodate the artificial constitutional requirement of 'voluntariness’ set forth in recent United States Supreme Court decisions, with emphasis on Miranda v. Arizona * * * There is no attempt here to codify the specific demands of Miranda. To do so would be to freeze into New York law determinations of the Supreme Court which are subject to overnight change (by the [Supreme] Court but with a different composition). By phrasing this requirement in general terms of violations of the defendant’s constitutional rights, the CPL creates a flexibility in this area enabling it to roll automatically and easily with the Supreme Court every time the latter changes its constitutional course”. (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A [1971 ed], CPL 60.45, at 262.) This history thus makes clear the intention to limit the application of CPL 60.45 (2) (b) (ii) to Miranda.
Secondly, the right to counsel under the Sixth Amendment and under NY Constitution, article I, §6 is a nonwaivable right unrelated to the concept of voluntariness in either the traditional sense or to Miranda. This conclusion is supported by an examination of the differences between the Fifth and Sixth Amendment constitutional rights and privileges. As stated in People v Velasquez (68 NY2d 533, 536 [1986]) "while the line between the Fifth Amendment protection against self-incrimination and the Sixth Amendment right to counsel is not always crystal-clear, the right to counsel protects persons, whether in custody or not, against the use of incriminating statements made as the result of governmental interrogation, including prosecutorial inducements to make such statements without the assistance of counsel”.
Initially, it is to be noted that the right to counsel warning given under Miranda is not the equivalent of the Sixth Amendment right to counsel. Rather, the warning is a procedural safeguard derived from the Fifth Amendment. Failure to give that warning or failure to voluntarily and knowingly waive that right after the warning has been given is a per se violation of Miranda and the Fifth Amendment, not the Sixth (see, Michigan v Tucker, 417 US 433 [1974]). As one commentator noted, "Suppression under the Sixth Amendment, then, *659 arises out of a concern entirely different from that expressed in the Miranda decision. Failure to abide by the right to counsel is not a test of a confession’s voluntariness, as it is under the Fifth Amendment; instead the failure is a constitutional violation apart from the confession’s voluntariness” (Ringel, Searches & Seizures, Arrests & Confessions § 24.4, at 24-11 [2d ed 1987]). "Since the right to counsel standard has nothing to do with voluntariness, it is completely independent of the usual line of inquiry. While the Miranda and voluntariness standards are required to determine the admissibility of every statement submitted for use at trial, the right to counsel standard arises only when the proper set of circumstances is present: attachment of the right to counsel followed by the taking of a statement from the defendant without his waiver of that right, or contrary to the instructions of counsel * * * The Miranda 'right’ represents a presumption by the Court that confessions are coerced when made in the absence of the advice of counsel. The right to counsel standard under the Sixth Amendment, in contrast, has nothing to do with voluntariness, but is meant to preserve from outside interference the relationship between a defendant and his attorney.” (Id., § 24.5, at 24-14.)
Specific examples will serve to highlight other differences. First the right to counsel attaches by operation of law when an accusatory instrument is filed (People v Samuels, 49 NY2d 218 [1980]); when a suspect requests an attorney (People v Cunningham, 49 NY2d 203 [1980]); when an attorney has entered the proceedings (People v Arthur, 22 NY2d 325 [1968]); and when a suspect has counsel on a pending unrelated matter of which the police are aware or should have become aware (People v Bartolomeo, 53 NY2d 225, supra; People v Bertolo, 65 NY2d 111, supra), to name a few. In each situation, the right to counsel cannot be waived without the attorney’s presence, no matter how many times nor how knowingly and voluntarily a suspect waives this right. Thus, a statement taken from a suspect after a full and knowing waiver of Miranda will be suppressed if an attorney had already notified the police that he represents the defendant, even though the statement is as a matter of fact voluntary. However, it is inadmissible by operation of law — as a violation of the defendant’s right to counsel.
Moreover, if a defendant, upon being given Miranda warnings, expresses his desire to remain silent, while such right must be respected, the police may attempt to elicit a state *660 ment from the defendant after giving fresh warnings (Michigan v Mosley, 423 US 96, 102, 104 [1975]). On the other hand, if that same defendant states that he wishes counsel, then all questioning must stop and any further statements, unless spontaneous, will be suppressed even if the defendant, upon receiving new warnings, talks to the police a few hours later (see, People v Cunningham, supra; see also, People v Ferro, 63 NY2d 316, 324 [1984], Jasen, J., dissenting on other grounds).
Furthermore, for the Miranda or Fifth Amendment safeguards to arise, the defendant must be in custody and be subject to interrogation (Miranda v Arizona, supra, at 446, 478). Under New York’s right to counsel, however, if the defendant has an attorney on the matter for which he is under investigation then even noncustodial interrogation is barred (People v Skinner, 52 NY2d 24 [1980]). Thus the right to counsel operates even in the absence of Miranda, and in no manner hinges on "voluntariness”. The Supreme Court has also noted these differences (see, Rhode Is. v Innis, 446 US 291, 300, n 4 [1980], "the policies underlying the two constitutional protections are quite distinct”). (See also, Brewer v Williams, 430 US 387 [1977].)
Even procedurally there is a distinction recognized by the New York courts. Whereas under the People v Huntley holding (15 NY2d 72 [1965]), which was codified in CPL 710.70, the burden of proving voluntariness beyond a reasonable doubt at both the hearing and trial rests with the People; under People v Rosa (65 NY2d 380 [1985]) it is defendant’s burden at the hearing to show he was, in fact, represented by counsel on an earlier charge at the time of interrogation (supra, at 387). If this issue were to be submitted to a jury do we now switch the burden to the People?
The decision of this court is not inconsistent with People v Griswold (58 NY2d 633 [1982]). That court in a memorandum opinion stated "we believe that the trial court erred in refusing defendant’s requested charge on the issue of voluntariness. Defendant sought to have the court charge that the testimony of two witnesses who stated that the defendant had asked for counsel could be considered by the jury in determining the voluntariness of the defendant’s subsequent confession. The charge was relevant to an issue before the jury”. (Supra, at 635.) An examination of the record indicates that the issue before that jury was whether the defendant had knowingly and voluntarily waived his Miranda rights, and the issue of the invocation of his right to counsel was thus relevant to the *661 Miranda issue as it related to the credibility of witnesses. The right to counsel, as such, was not an issue before that jury which preceded People v Cunningham (supra). (Cf., People v McLeod, 109 AD2d 70 [2d Dept 1985].)
If a literal interpretation of the words "involuntarily made” as used in CPL 60.45 were to require the issue of right of counsel to be submitted to a jury because it is a right derived from the Constitution, then it will be equally argued that the same rule must apply to statements obtained in violation of other constitutional challenges. For example, if a statement was obtained where there was allegedly no probable cause (Dunaway v New York, 442 US 200 [1979]) do we submit the issue of probable cause to the jury? Where a person is arrested in his home without a warrant do we submit that issue and the issue of exigency to the jury? (Payton v New York, 445 US 573 [1980].) If a statement is first obtained in violation of Miranda, and a subsequent statement is made after proper warnings have been given do we submit to the jury the issue of attenuation (People v Tanner, 30 NY2d 102 [1972]) or the issue of whether the statements "[were] in reality, a single continuous chain of events”? (People v Chapple, 38 NY2d 112, 114 [1975].) While it may be true that a "jury can easily be instructed on what Miranda requires” (People v Graham, 55 NY2d 144, 152, supra) I respectfully submit that issues involving Bartolomeo (supra) and its progeny cannot be presented to a jury without placing an untenable burden on the People. The complexity of those issues, as are the issues of probable cause, attenuation, "cat out of the bag”, etc., are and should properly remain the province of the Judge and not a jury.
Graham (supra) rejected as a denigration of the jury system the argument that the question of whether a defendant was adequately advised of her rights under Miranda is not one suitable for a lay jury. (People v Graham, supra, at 152.) While it may be similarly argued that if the sole issue presented was whether or not the defendant was represented by counsel on a pending case then perhaps that issue could be presented to the jury with relative ease. (Cf., 1 CJI[NY] 11.00, at 628-632.) However, this is not the sole issue under the Rogers-Bartolomeo rule. It is unrealistic to submit to a jury also the collateral question of whether or not an officer had a good-faith basis to believe that a defendant had a pending unrelated case on which he was represented by counsel.
*662 On the facts presented, how is the jury to determine whether or not there was a duty on the part of the police officer to make further inquiries into the status of defendant’s unrelated case? Bertolo (supra, at 118) requires the Judge at the hearing to take into consideration the extent of the police knowledge, the severity and notoriety of the prior charges and the good or bad faith of the police in determining the officer’s duty to inquire. How is a jury to evaluate these factors? What evidence would have to be presented in such a case? Wouldn’t hearsay have to be introduced as it is in the pretrial hearing? Are police experts to testify at what point a case is dismissed when a complainant fails to appear? Are we to admit statistics on that subject? Are other court officials such as Judges, clerks, District Attorneys, defense counsel, etc., going to testify as to their experiences? What evidence would have to be introduced for a jury to be able to pass upon the severity and notoriety of prior charges? It is no denigration of the jury system to suggest that such complex issues, which involve mixed questions of law and fact, must continue to remain solely with the Judge.
CONCLUSION
In the lead opinion of Graham, the court stated that "the statutes mandate that any issues of voluntariness set out in 60.45 may go to the jury”. (Supra, at 151; emphasis mine.) (Only two Judges concurred in this opinion.) However, considering the legislative history of CPL 60.45, and that of CPL 710.70 which codified Huntley, and the legal development of the right to counsel as set forth in this opinion, the language "involuntarily made” is not unambiguous and therefore a literal construction of the statute as suggested in the dicta of the aforementioned opinion was not applied by this court.
As was stated in People v Reed (276 NY 5, 9 [1937]), "the People should be entitled to any reasonable doubt a trial judge may have upon the law”. There being no appellate authority to the contrary this court decided that the issue of right to counsel not be submitted to the jury and declined to further extend Graham (supra). Accordingly, the motion to set aside the verdict was denied.
As Judge Wachtler stated in his concurring opinion in Graham "[i]t appears that in codifying the procedure for truly involuntary confessions the Legislature inadvertently broad *663 ened it * * * if this is inadvertence, it can only be corrected by rewriting the statute”. (Supra, at 153.) I would hope the Legislature will now take heed, so that legislative correction will avoid endless litigation of the issues raised in this opinion.

. The above constituted this court’s findings of fact and conclusions of law at the hearing.

. CPL 60.45 provides in pertinent part as follows:
"1. Evidence of a written or oral confession, admission, or other statement made by a defendant with respect to his participation or lack of participation in the offense charged, may not be received in evidence against him in a criminal proceeding if such statement was involuntarily made.
"2. A confession, admission or other statement is 'involuntarily made’ by a defendant when it is obtained from him * * *
"(b) By a public servant engaged in law enforcement activity or by a person then acting under his direction or in cooperation with him * * *
"(ii) in violation of such rights as the defendant may derive from the constitution of this state or of the United States.”
CPL 710.70 (3) provides: "Nothing contained in this article, however, precludes a defendant from attempting to establish at a trial that evidence introduced by the people of a pre-trial statement made by him should be disregarded by the jury or other trier of the facts on the ground that such statement was involuntarily made within the meaning of section 60.45. Even though the issue of the admissibility of such evidence was not submitted to the court, or was determined adversely to the defendant upon motion, the defendant may adduce trial evidence and otherwise contend that the statement was involuntarily made. In the case of a jury trial, the court must submit such issue to the jury under instructions to disregard such evidence upon a finding that the statement was involuntarily made.” (Emphasis mine.)