THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS
MEDINA, Appellant.

First Department, May 4, 1989

*See, People v Medina,* 138 Misc 2d 653.

### APPEARANCES OF COUNSEL

*Beth J. Thomas* of counsel *(Mark Dwyer* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Elizabeth J. Vila* of counsel *(Philip L. Weinstein,* attorney), for appellant.

### OPINION OF THE COURT

Asch, J.

Defendant stands convicted of the cold-blooded execution of two men. After surprising his two victims, defendant shot one in the head, killing him instantly. He then stabbed the other repeatedly in the neck and upper back, leaving him to bleed to death. Defendant's guilt was proven beyond a reasonable doubt and this guilt is not even contested on appeal. Defendant, in seeking reversal, relies, instead, on two main legal arguments concerning his confession to the commission of these homicides.

First, defendant argues that the confession was obtained in violation of his right to counsel, in that the police did not make sufficient efforts to discover whether he was represented by counsel on a pending unrelated case.

At the suppression hearing, Detective Cutter testified that, based upon his experience, he believed that the prior charges had been dismissed inasmuch as the defendant told him he had been "let go" in the prior action when the complaining witness had not appeared in court on four occasions. Indeed, the detective reported in a nearly contempora-

neous statement to an Assistant District Attorney that defendant had a prior case which had been "dismissed". It seems unlikely that he would try to deceive a District Attorney. The suppression court, accordingly, accepted Detective Cutter's testimony that he had no *actual* knowledge of the pendency of prior charges or *actual* knowledge of defendant's representation by counsel. It also found that there was no other evidence of bad faith on the part of Detective Cutter *(see,* 138 Misc 2d 653). This finding was not unreasonable.

In support of its position, the dissent cites the following trial colloquy:

"THE COURT: Did you ever have a case when you learned or had opportunity to find a case dismissed after a complainant didn't show up?

"THE WITNESS: Not after 4 times, no."

Although the dissent finds that this answer "undermines the bona fides" of the detective's prior testimony, the substance and context of the hearing testimony clearly show that he simply gave a confusing answer to a confusing question. The suspicions as to Detective Cutter's "bona fides" seem to be no more than cynical conjecture and surmise.

*People v Bertolo* (65 NY2d 111) supports the conclusion reached by the hearing court. In *Bertolo,* the police knew the defendant, arrested for first degree sodomy, had been arrested some six months before on sexually related misdemeanor charges, but made no further inquiry, believing those charges had been already disposed of. The court made two statements highly relevant to the facts before us: "Absent some actual knowledge, however, of either defendant's representation by counsel or the pendency of prior charges, the police have no affirmative duty to cease their questioning or inquire whether defendant has an attorney" *(People v Bertolo, supra,* at 119); and at page 120: "Finally, where the police do not actually know that earlier charges are pending, there is no warrant for imputing constructive knowledge that the suspect already has legal counsel absent some measure of bad faith on their part."

The dissent raises the failure of Detective Cutter to inquire as to the nature of the prior charge; whether defendant was required to return to court; whether he had been paroled or released on bail, in questing his good faith in assuming that the prior charges were no longer pending. Yet, in *Bertolo (supra),* where defendant was charged with *sodomy,* the police knew defendant had been arrested six months previously for

two *sexually* related misdemeanors. There, despite the fact there was ample time to do so, the detective assigned did not attempt to locate the case jackets *or* investigate the cases further. The Court of Appeals, in *Bertolo,* did not construe the failure of the police to inquire further as proof of bad faith. Nothing in *Bertolo* obligates a police officer, who in good faith believes that charges had been dismissed and, accordingly, does not have "actual knowledge" of pending charges, to make *further* inquiries to exclude any possibility his interpretation may be incorrect.

We find that the record amply supports the hearing court's judgment that the officer in this case had no "actual knowledge of the pending charges and was acting in good faith".

In *People v Colwell* (65 NY2d 883, 885), the Court of Appeals declined to extend what it described as "the right to counsel rule articulated in *Rogers" (People v Rogers,* 48 NY2d 167) to a situation in which the defendant was represented on an appeal from the prior charge.

Clearly, no appropriate purpose is served in suppressing a confession as to a new charge in the appeal before us, where the investigating detective says that he believed the prior charges were dismissed and acted on that basis and, therefore, could not realistically have had any motive to ask questions about the *prior* arrest. *Bertolo (supra),* which found that the officer had no "actual knowledge of the pending charges" and that his conclusion was reached in good faith, applies here, and the record supports that finding of Criminal Term. But even if it is assumed that the officer here, contrary to his statement, suspected the possibility that there were pending charges, but chose not to pursue that possibility and acted on the basis that there were no pending charges, what reasonable basis would there be to suppress a statement which was in fact exclusively addressed to the new and wholly unrelated charge?

This analysis of the application and purpose of the rule relating to the right to counsel, derived from defendant's representation on prior charges, is strengthened by the most recent decisions of the New York Court of Appeals. In these cases the court held that the right to counsel expired with the disposition of the charges, making admissible defendant's inculpatory statements made in the absence of counsel *(see, People v Robles,* and *People v Murray,* 72 NY2d 689).

The full rationale of the court's reasoning is set forth in these paragraphs.

"It is clear from these decisions and from the background in which it was decided that *Rogers* established a derivative and accordingly limited right with respect to unrelated charges in order to protect the direct and full-fledged right to counsel in the pending proceeding. In light of this rationale, a decision by investigators to refrain from questioning a suspect until he or she is no longer represented by counsel on unrelated charges protects the interests with which we were concerned in *Rogers* as fully as a decision to question the suspect in the presence of counsel while the prior charges are pending.

"In addition, we consider that the rule advocated by the defendants would present difficulties in application at least equal to those that prompted us to adopt the bright-line rule of *Rogers*. It would require police officers, before questioning a suspect, to ascertain whether at any point during the investigation the suspect was represented by counsel on unrelated charges and, if so, whether someone involved in the investigation made a conscious decision to refrain from questioning the suspect at such time in order to 'circumvent' the defendant's right to counsel. Such a requirement would seriously impede investigations and would only benefit those with the longest arrest records.

"Similar difficult questions of motive and timing would be presented to suppression courts. In resolving these questions, the courts would find themselves second-guessing, and inevitably interfering with, the prosecutorial prerogative to dismiss a case or delay an arrest. The rules we have adopted and applied here, which focus on the suspect's status at the time of the interrogation, not only fully protect the interests with which we were concerned in *Rogers,* but also avoid these problems by providing an objective measure to guide law enforcement officials and the courts." *(People v Robles,* 72 NY2d, *supra,* at 698-699.)

The recent Fourth Department case of *People v Colquit* (— AD2d — [Mar. 10, 1989]), upon which the dissent places much reliance, actually reinforces the position of the majority. As the court there pointed out, "Ciminelli and Lieutenant Mayer were engaged jointly in the Beal homicide investigation, and Mayer's *actual knowledge* that defendant was represented on the menacing charge, acquired subsequent to dismissal of the harassment charge, must be imputed to Ciminelli *(see, People v Bernal,* 92 AD2d 489; *see also, People v Garofolo,* 46 NY2d 592; *People v Pinzon,* 44 NY2d 458)" (emphasis added).

The second argument of the defendant is that the issue of whether his statements were "involuntarily made" should have been submitted to the jury.

At first blush, both statute and case law would appear to buttress this position, i.e., that the court should have charged the jury to decide the "voluntariness" of the defendant's statements not only insofar as his Fifth Amendment rights under *Miranda v Arizona* (384 US 436) were concerned, but also encompassing his Sixth Amendment right to counsel under *Rogers-Bartolomeo.* Thus, CPL 710.70 (3) provides, in pertinent part: "Nothing contained in this article * * * precludes a defendant from attempting to establish at a trial that evidence introduced by the people of a pre-trial statement made by him should be disregarded by the jury * * * on the ground that such statement was involuntarily made *within the meaning of section 60.45.* Even though the issue of the admissibility of such evidence was not submitted to the court, or was determined adversely to the defendant upon motion, the defendant may adduce trial evidence and otherwise contend that the statement was involuntarily made. In the case of a jury trial, the court must submit such issue to the jury under instructions to disregard such evidence upon a finding that the statement was involuntarily made." (Emphasis added.)

CPL 60.45 (2) (b) (ii) defines a confession, admission or other statement as "involuntarily made" when it is obtained, *inter alia,* "in violation of such rights as the defendant may derive from the constitution of this state or of the United States".

The Court of Appeals has followed the literal language of the statute and found that claims *other* than those involving the issue of voluntariness in the generally understood classic sense would be appropriate for submission to the jury. *(People v Graham,* 55 NY2d 144 [whether *Miranda* warnings given and whether defendant waived those rights]; *People v Griswold,* 58 NY2d 633 [whether defendant invoked his right to counsel prior to making incriminating statements].) However, upon analysis, it is clear that the issue in those cases, unlike the one under consideration, involved the factual one of whether the defendants knowingly and voluntarily waived constitutional rights.

Here, on the other hand, while there is no dispute as to defendant's waiver of his rights, the issue sought to be submitted to the jury is the "reasonableness" or propriety of Detec-

tive Cutter's belief that defendant's prior case had been disposed of, or whether Detective Cutter acted in "bad faith". To decide this issue, however, would require a knowledge of the criminal justice system which not only lay people, but even lawyers who are not active in such practice, do not possess. What defendant would like, and the dissent agrees he should have, is a jury resolution of the officer's "reasonableness" or "bad faith" in believing that pending charges had been dismissed. This, however, requires a resolution of a question of law which only the court can make. Here, unlike *Graham* and *Griswold (supra)*, there was no factual issue to submit to the jury. There is no factual dispute that Detective Cutter was told the complaining witness did not appear on four occasions and defendant explained that he had been "let go". What is left, therefore, is the legal issue of whether the detective's belief that the case had been dismissed based on these undisputed facts was reasonable as a matter of law.

The Trial Judge, in a detailed, scholarly decision denying defendant's motion to set aside the verdict, noted appropriately:

"If a literal interpretation of the words 'involuntarily made' as used in CPL 60.45 were to require the issue of right of counsel to be submitted to a jury because it is a right derived from the Constitution, then it will be equally argued that the same rule must apply to statements obtained in violation of other constitutional challenges. For example, if a statement was obtained where there was allegedly no probable cause *(Dunaway v New York,* 442 US 200 [1979]) do we submit the issue of probable cause to the jury? Where a person is arrested in his home without a warrant do we submit that issue and the issue of exigency to the jury? *(Payton v New York,* 445 US 573 [1980].)* If a statement is first obtained in violation of *Miranda,* and a subsequent statement is made after proper warnings have been given do we submit to the jury the issue of attenuation *(People v Tanner,* 30 NY2d 102 [1972]) or the issue of whether the statements '[were] in reality a single continuous chain of events'? *(People v Chapple,* 38 NY2d 112, 114 [1975].)* * * *

"On the facts presented, how is the jury to determine whether or not there was a duty on the part of the police officer to make further inquiries into the status of defendant's unrelated case? *Bertolo (supra,* at 118) requires the Judge at the hearing to take into consideration the extent of the police knowledge, the severity and notoriety of the prior charges and

the good or bad faith of the police in determining the officer's duty to inquire. How is a jury to evaluate these factors? What evidence would have to be presented in such a case? Wouldn't hearsay have to be introduced as it is in the pretrial hearing? Are police experts to testify at what point a case is dismissed when a complainant fails to appear? Are we to admit statistics on that subject? Are other court officials such as Judges, clerks, District Attorneys, defense counsel, etc., going to testify as to their experiences? What evidence would have to be introduced for a jury to be able to pass upon the severity and notoriety of prior charges? It is no denigration of the jury system to suggest that such complex issues, which involve mixed questions of law and fact, must continue to remain solely with the Judge." *(People v Medina,* 138 Misc 2d 653, 661-662, *supra.)*

It was not in derogation of the jury system *(People v Graham,* 55 NY2d, at 152, *supra)* to conclude that defendant's claim as to the admissibility of his confession should not have been submitted to the jury, since resolution of that claim required a conclusion of law to be decided by the court.

Accordingly, the judgment of the Supreme Court, New York County (Alfred H. Kleiman, J., at suppression hearing and trial), rendered January 5, 1987, after jury trial, convicting defendant of two counts of murder in the second degree and sentencing him to two consecutive terms of 25 years to life, should be affirmed.

ROSENBERGER, J. (dissenting). The issue in this appeal is whether the facts, as known to the investigating detective at the time the defendant was subjected to custodial interrogation, warranted the assumption that a prior charge against him had been dismissed, thereby relieving the detective of the duty to ascertain whether he was represented by counsel on the pending charge. The ghastly nature of the crimes of which the defendant stands accused must not divert us from the task of applying the law objectively to the facts and of ruling in accordance with its mandate, however much we may abhor the outcome.

The defendant was found guilty of the January 13, 1986 murders of Jose Fred and Gilberto Lopez in Lopez's apartment on East 10th Street in Manhattan. At about 11:30 P.M. on the evening of the murders, Jose Fred's cousin went to visit him at Lopez's home. As he approached the second-floor apartment, he noticed blood seeping out from under the door and

ran home to tell his father. The cousin returned to Lopez's apartment building about 10 minutes later with his father and two other men. They saw the defendant, who lived on the first floor, walking away from the building very fast, but not running. His hair appeared to be wet.

When the men knocked on Lopez's door, Lopez, who had been stabbed several times in the neck and was unable to open the door, called out that Fred had been shot and that they should send for the police. Shortly thereafter, the police arrived and, entering the apartment from the fire escape, found Jose Fred dead on the living room sofa from a gun shot wound to the head. Lopez lay directly in front of the apartment door bleeding profusely. In response to questioning while the emergency medical technicians were attending him, Lopez told the police that it was "Luis from the first floor" who had stabbed him and shot Fred. The police went downstairs to the defendant's apartment and spoke with his wife. She informed them that he was not at home and that he had just been released from jail that afternoon. This information was relayed to Detective William Cutter before he spoke to the defendant upon his return at about 2:45 A.M. on January 14.

At the suppression hearing, Detective Cutter testified that in his initial conversation with the defendant he asked him about his recent release from jail. Defendant told the detective that he had been released from the Supreme Court in Manhattan because the complainant in the case "had not shown up four times and he was let go." Detective Cutter, who had served in the police department for 18 years, testified that based on his experience he interpreted this to mean that the charges against the defendant had been dismissed. He made no further inquiries of him about the status of his case nor were any official records checked by any of the investigating officers.

At about 11:20 on the evening of January 14, the defendant was brought to the Ninth Precinct for questioning. After being advised of his constitutional rights, the defendant said that he was willing to answer questions without an attorney present. During the interview, he confessed to having committed the crimes. Thereafter, he refused to make further statements without an attorney present. The defendant had, in fact, been paroled (released without bail) on January 13 on a pending charge of first degree assault, and was represented by counsel in that case.

Supreme Court denied the defendant's motion to suppress

the statements he had made during the custodial interrogation, finding that his right to counsel had not been violated under the rules enunciated by the Court of Appeals in *People v Rogers* (48 NY2d 167 [1979]), *People v Bartolomeo* (53 NY2d 225 [1981]), and in *People v Bertolo* (65 NY2d 111 [1985]). The court credited Detective Cutter's testimony and declined to infer knowledge of prior representation, finding, to the contrary, that it was "not unreasonable, under the circumstances within his knowledge and based upon his general experience, for the detective to believe the earlier case had been dismissed" (138 Misc 2d 653, 655 [Sup Ct, NY County 1988]).

I find upon reviewing the suppression hearing transcript, that it does not support the court's findings. Under cross-examination at the suppression hearing, Detective Cutter stated his understanding of the law was that a suspect's right to counsel "automatically attaches if he has an open case" and that he cannot be questioned without counsel present. The detective acknowledged that there were no exigent circumstances which prevented him from asking further questions to clarify the status of the defendant's court case. The court also posed the following questions to the detective:

"THE COURT: What happens, based upon your experience, when a complainant fails to show?

"THE WITNESS: The case is dismissed.

"THE COURT: Is that your experience that cases are dismissed or defendants are paroled and released? Have you ever heard of a defendant being paroled?

"THE WITNESS: I have heard of defendant's *[sic]* being paroled.

"THE COURT: When complainant's *[sic]* fail to show up?

"THE WITNESS: Yes.

"THE COURT: Did you ever have a case when you learned or had opportunity to find a case dismissed after a complainant didn't show up?

"THE WITNESS: Not after 4 times, no."

Thus, the detective's own testimony undermines the bona fides of his assertion that he assumed the prior charges against the defendant had been dismissed because the complainant failed to appear four times. Although the majority assert that the above testimony was the result of some misunderstanding or confusion on the detective's part, there is nothing in the record to support this speculative claim.

In *People v Bertolo (supra)* and most recently in *People v Robles* and its companion case *People v Murray* (72 NY2d 689), the Court of Appeals set forth the current state of the *Rogers-Bartolomeo* doctrine as delineated and refined by subsequent cases. *(See, People v Colwell,* 65 NY2d 883 [1985]; *People v Lucarano,* 61 NY2d 138 [1984]; *People v Fuschino,* 59 NY2d 91 [1983]; *People v Servidio,* 54 NY2d 951 [1981]; *People v Smith,* 54 NY2d 954 [1981].) The line of cases most relevant to the issue herein holds that once the accused has invoked his State constitutional right to counsel, even before commencement of formal adversary proceedings against him, he may not be subjected to custodial interrogation unless his attorney is present, and any uncounseled waiver of the accused's constitutional rights is invalid. *(People v Donovan,* 13 NY2d 148 [1963]; *People v Arthur,* 22 NY2d 325 [1968]; *People v Cunningham,* 49 NY2d 203 [1980].)

Although this prohibition was originally deemed to be case specific, precluding interrogation only as to those matters in which the accused was represented by counsel, but not as to "unrelated" charges *(People v Stanley,* 15 NY2d 30 [1964]; *People v Taylor,* 27 NY2d 327 [1971]), it was broadened when the Court of Appeals, in *People v Rogers* (48 NY2d 167, *supra),* adopted the "bright-line rule precluding custodial questioning on any matter in the absence of counsel once a defendant is represented by an attorney" *(People v Robles,* 72 NY2d, at 697, *supra; People v Miller,* 76 AD2d 576, 581-585 [2d Dept 1980, Mangano, J.], *affd* 54 NY2d 616 [1981]).

Subsequent cases raised the issue of how tautly this bright line would be drawn. Thus, in *People v Bartolomeo,* the court held that actual knowledge of an unrelated, outstanding charge against the defendant placed the interrogating detectives "under an obligation to inquire whether defendant was represented by an attorney on that charge" and, failing such inquiry, "the officers were chargeable with what such an inquiry would have disclosed" (53 NY2d, at 232, *supra).* Where, however, the defendant is not represented by counsel on the prior charge *(People v Kazmarick,* 52 NY2d 322 [1981]), or the prior charge is no longer pending because terminated by guilty plea *(People v Robles, supra),* conviction *(People v Colwell,* 65 NY2d 883, *supra),* other final disposition *(People v Mann,* 60 NY2d 792 [1983]; *People v Murray, supra),* the bright line is lifted and no such bar to custodial interrogation exists. This, as the court explained in *People v Robles* and *People v Murray,* is so because the *Rogers* rule "established a derivative

and accordingly limited right with respect to unrelated charges in order to protect the direct and full-fledged right to counsel in the pending proceeding" (72 NY2d, at 698, *supra*). But where, as here, the direct and full-fledged right to counsel exists because the defendant is in fact represented on an extant charge and the police have knowledge, actual or constructive, thereof, the *Rogers-Bartolomeo* doctrine applies with full force.

The majority misconstrue the significance of the language in *People v Robles (supra)* regarding the limited nature of this derivative right under the *Rogers-Bartolomeo* doctrine and would read it as heralding a return to the case specific test of *People v Taylor (supra)* or, at least, as requiring a showing of prejudice to the defendant's full-fledged right to counsel on the prior charge.

I cannot agree with the suggestion that application of the rule is now conditional upon whether the statement to be suppressed might conceivably have an adverse impact on the case pending against the defendant at the time of the interrogation and in which he is represented by counsel. Such a limiting test has not been utilized in any of the cases in which the rule has been applied *(see, e.g., People v Smith,* 54 NY2d 954, *supra; People v Bartolomeo,* 53 NY2d 225, *supra; People v Bell,* 50 NY2d 869 [1980]; *People v Leonard,* 113 AD2d 258 [2d Dept 1985]; *People v Redman,* 107 AD2d 1008 [4th Dept 1985]). Moreover, the Court of Appeals has given no indication of retreat from the bright line drawn in *People v Rogers (supra)* to protect the attorney-client relationship which exists with regard to the pending charge. In *People v Robles,* the court stressed the fundamental difficulty in applying *Taylor (supra)* and reiterated the rationale underpinning the rule in *Rogers:* that " 'it is the role of defendant's attorney, not the State, to determine whether a particular matter will or will not touch upon the extant charge' " (72 NY2d, at 697, *supra,* citing *People v Rogers, supra,* at 173).

In the case now before us, there is no question that the defendant was represented by counsel on an outstanding charge and, therefore, that the derivative right under *Rogers (supra)* applies in this context. The issue here, however, is whether the police may be charged with knowledge of the defendant's right under the rule of *Bartolomeo (supra)* and subsequent cases.

Absent actual knowledge of "either defendant's representa-

tion by counsel or the pendency of prior charges" the police have no affirmative duty to inquire whether the defendant has an attorney before questioning him *(People v Bertolo,* 65 NY2d, at 119, *supra).* However, the Court of Appeals has consistently admonished that this "does not mean that the police may act by subterfuge to conceal such knowledge, or to overlook the obvious" *(People v Servidio,* 54 NY2d, at 954, *supra),* nor should the courts "condone a deliberate and concerted effort on the part of the police to insulate themselves from the knowledge that the defendant was represented by counsel" *(People v Fuschino,* 59 NY2d, at 99, *supra).*

While the Court of Appeals in *Bertolo* refused to impute constructive knowledge to the police that the accused was already represented by counsel because the police did not actually know that prior charges were pending against him, the court also stated that this result would not obtain where there was evidence of "some measure of bad faith" or malfeasance on their part (65 NY2d, at 120, *supra).* The facts in *Bertolo* led the court to conclude that although the investigating officers knew that the defendant had been arrested several months before on minor charges, it was entirely reasonable for them to believe that those charges were no longer pending.

The good or bad faith of the investigating officers raises a question of fact which must be objectively answered. When determining whether a police officer's belief that a prior charge has been disposed of is justified, the prime factors to be considered are the seriousness of the charge and its remoteness in time *(People v Bertolo,* 65 NY2d, at 119, *supra; see also, People v Fuschino,* 59 NY2d, at 98, *supra* [reasonable and well-founded belief that two-year-old charges against the defendant had been dismissed relieved State police of obligation to inquire]; *cf., People v Smith,* 54 NY2d, at 955-956, *supra* [officer under an obligation to inquire where he had actual notice of the defendant's arrest on sodomy charge eight months earlier]). In this case the charge was not a minor one, but a class B felony, and the defendant had been released from custody only the day before his arrest for the murders herein.

Detective Cutter lacked sufficient information on which to make a reasonable, good-faith assumption as to the pendency of the charge against the defendant. He made no inquiry regarding the nature of the charge or when it arose. Nor did he inquire whether the defendant was required to return to court; whether he had been paroled or released on bail—

possible dispositions of which, the detective testified, he was aware. It is also significant, and troubling, that the detective could not recall if he specifically asked the defendant whether the case had been dismissed.

In *People v Colquit* (— AD2d — [4th Dept, Mar. 10, 1989]), the Fourth Department recently rejected the claim that an investigating officer acted in good faith when he assumed that an eight-month-old menacing charge against the defendant, who had just been arrested for a homicide, had been dismissed. The police records reviewed by the investigator prior to his interrogation of the defendant showed that the defendant had been arrested for harassment and menacing, and that the harassment charge had been dismissed. However, no disposition was given for the other charge and the defendant was not asked whether he was represented on any outstanding charges. Moreover, the lieutenant supervising the homicide investigation was found to have had actual knowledge that the defendant was represented on the menacing charge, and this knowledge was imputed to the investigator working under him.

To argue, as does the majority, that a detective is free, under the circumstances presented here and in *Colquit (supra)*, to assume that a serious charge has been dismissed is to sanction what may be a calculated decision by the police to insulate themselves from information that is readily available and which triggers the bright-line rule intended to protect a full-fledged constitutional right. Although the Court of Appeals decisions interpreting the *Rogers-Bartolomeo* doctrine "with their emphasis upon the knowledge available to the police, implicitly recognize that there are practical limitations to the obligations that can be imposed upon the investigating authorities," those decisions also reflect a concern "that a right known to exist or the existence of which could easily be ascertained not be ignored." *(People v Lucarano, 61 NY2d, at 147, supra.)* Further, the court has made clear that the value of the individual's right to counsel "far exceeds the inconvenience caused by requiring that the police make a simple inquiry of defendant." *(Supra, at 147.)*

Inasmuch as the detective in this case lacked sufficient information on which to base a good-faith assumption that prior charges against the defendant were no longer pending, which information could have been easily obtained by a simple inquiry of defendant, or other readily available official files, I find, under the rule in *People v Bartolomeo* that the

police were chargeable with whatever information that inquiry would have disclosed (53 NY2d, at 232, *supra*). It would have revealed that the charge was pending and that the defendant was represented by counsel. Thus, the waiver of the defendant's Sixth Amendment right to counsel during the custodial interrogation without counsel present was ineffective and his statement should have been suppressed.

Even if I did not think the defendant's statements suppressible as a matter of law, a new trial would, in any event, be warranted. The question of whether these statements were "involuntarily made" because they were obtained in violation of the defendant's constitutional right to counsel (CPL 60.45 [2] [b] [ii]), was one which should have been submitted to the jury (CPL 710.70; *People v Graham*, 55 NY2d 144, 149-151 [1982]). *(See,* Sobel, *The "Second-Bite" Role of the Jury in the Admissibility of Confessions in New York,* 48 Brooklyn L Rev 1, 17-24 [1981]). Although the court did instruct the jury to consider the voluntariness of the defendant's statements insofar as his Fifth Amendment rights under *Miranda v Arizona* (384 US 436 [1966]) were concerned, this instruction did not encompass his Sixth Amendment rights under the *Rogers-Bartolomeo* rule. The issue is preserved by defense counsel's motion *in limine,* made during trial, for an instruction to the jury on this specific question.

Accordingly, I would reverse the judgment of the Supreme Court, grant the motion to suppress defendant's custodial statements, and remand the matter for a new trial.

Ross and KASSAL, JJ., concur with ASCH, J.; MURPHY, P. J., and ROSENBERGER, J., dissent in an opinion by ROSENBERGER, J.

Judgment, Supreme Court, New York County, rendered on January 5, 1987, affirmed.