Abraham N. Geller, J.
This is one of a number of motions brought in this court following the recent landmark decision of the Supreme Court of the United States holding that all evidence obtained by searches and seizures in violation of the Constitution is inadmissible in a State court. (Mapp v. Ohio, 367 U. S. 643 [June 19, 1961].) Thus the exclusionary rule barring the use in the Federal courts of evidence- procured by means of unreasonable searches and seizures prohibited by the Fourth Amendment, which was first promulgated in 1914 (Weeks v. United States, 232 U. S. 383), has finally been imposed upon the States by the Supreme Court through the operation of the due process clause of the Fourteenth Amendment.
New York has been one of the States which has applied the traditional common-law rule that relevant and competent and, therefore, reliable evidence is admissible, even though procured by wrongful or even illegal methods (see 8 Wigmore, Evidence [3d ed.], § 2184; McCormick, Evidence, p. 296). While certain exceptions to that rule were recognized, as in the case of evidence obtained in violation of the constitutional privilege against self incrimination, our courts admitted evdence obtained by unlawful searches and seizures. (People v. Adams, 176 N. Y. 351 [1903]; People v. Defore, 242 N. Y. 13 [1926].)
*487 It is now incumbent upon all State courts to exclude such evidence in accordance with the mandate of the Supreme Court. The present motions before this court request suppression of such evidence and ultimate relief in the form of dismissal of the respective indictments on the ground of alleged unconstitutional searches resulting in the procuring of the evidence' upon which the Grand Jury returned indictments. In the absence of any statute of court rule governing this situation — an unprecedented one for this State — I believe that some guiding principles may become apparent upon a review of the pertinent factors involved in the problem.
Preliminarily it should be observed that, even in the absence of statute or rule, our courts have the inherent right and duty “ to protect the citizen in his constitutional prerogatives and to prevent oppression or persecution.” (People v. Glen, 173 N. Y, 395, 400; People v. Gersewitz, 294 N. Y. 163,167.)
(1) GENERAL CONSIDERATIONS
Necessary procedures to implement the Mapp directive, consonant with the particular problems and requirements of individual States, must be devised in the courts of those States which previously adhered to the common-law rule. While the States are now compelled to follow the same “ constitutional standards” and “fundamental criteria” in their approaches to the solution of crime as the Federal Government (Mapp v. Ohio, supra, p. 658), it was explicitly noted that, “ As is always the case, however, state procedural requirements governing assertion and pursuance of direct and collateral constitutional challenges to criminal prosecutions must be respected” (n., p. 659). The court also observed that there could be “no fixed formula” for the “recurring questions of the reasonableness of searches ” (p. 653).
When California’s highest court decided in People v. Cahan (44 Cal. 2d, 434 [1955]) to adopt the Federal exclusionary rule, it pointed out (pp. 450-451) that “ if the federal cases indicate needless limitations on the right to conduct reasonable searches and seizures or to secure warrants, this court is free to reject them” that the objective was to develop “workable rules governing searches and seizures and the issuance of warrants that will protect both the rights guaranteed by the constitutional provisions and the interest of society in the suppression of crime. ’ ’
The problem of law-enforcement standards in the several States involving almost every conceivable type of minor and major crimes as compared with the highly specialized crimes *488 cognizable Federally can be solved better by each State than by compelling uniformity in all respects. But the “ workable rules ” developed by any State must satisfy the constitutional imperative and be carried out in good faith for the protection of the right of all persons to be free from unreasonable searches and seizures.
In this State the Joint Legislative Committee on Privacy of Communications has held a public hearing to consider legislation to establish rules to enable the defendant to make a motion to suppress evidence obtained by unconstitutional search and seizure.
Such a rule presently governs Federal procedure. Subdivision (e) of rule 41 of the Federal Rules of Criminal Procedure provides: “ A person aggrieved by an unlawful search and seizure may move * * * for the return of the property and to suppress for the use as evidence anything so obtained * * * The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing.”
This rule is a crystallization of the decisions of the Supreme Court that in the interest of normal procedural orderliness the motion to suppress should be made prior to trial to avoid interrupting the course of the trial and breaking the continuity of the jury’s attention (Nardone v. United States, 308 U. S. 338, 342) by raising a collateral issue requiring protracted proceedings before the court not in the presence of the jury. But, if fhe objection to the use of such evidence is made for the first time at the trial, the Trial Judge may excuse the delay if in his judgment that would not unduly interfere with the trial (see United States v. Di Re, 159 F. 2d 818). It has been said: ‘ ‘ The rule is one of practice; and is not without exceptions.” (Cogen v. United States, 278 U. S. 221, 223; see, also, Gouled v. United States, 255 U. S. 298, 312, 313.) Mr. Justice Frankfurter expressed the same view in Jones v. United States (362 U. S. 257, 264): “ As codified, the rule is not a rigid one, for under Rule 41(e), ‘ the court in its discretion may entertain the motion [to suppress] at the trial or the hearing.’ This qualification proves that we are dealing with carrying out an important social policy and not a narrow, finicky procedural requirement. This underlying policy likewise precludes application of the Rule so as to compel the injustice of an internally inconsistent conviction.”
In People v. Berger (44 Cal. 2d 459), the California court, referring to the relaxation of the requirements in the Federal *489 courts as the result of their experience, pointed out that there were no compelling reasons why an exception should he made in the case of illegally obtained evidence from the ordinary practice that preliminary questions of law and fact governing the admissibility of evidence, such as privileged communications, are determined by the trial court when objection is raised at the trial. The court took the view that “ a requirement that a preliminary motion be made to suppress the evidence would inevitably result in delaying the criminal trial while the motion was being noticed, calendared, heard, argued and determined ’ ’ (p. 464).
In Illinois, another State which prior to Mapp voluntarily adopted the Federal exclusionary rule, it has been held that the court has the right to defer consideration of a motion to suppress made prior to trial to the time when that evidence is offered at the trial. (People v. Kissane, 347 Ill. 385.)
On analysis it seems clear that, when a defendant moves to suppress the product of an alleged illegal search and seizure, the governing procedure should take into account the practice and necessities of the particular court, keeping in mind the constitutional requirement for dispatch, not only in defendant’s case, but in all criminal proceedings before that court.
It seems to me that the solution would appear to be: a statutory rule along the lines of subdivision (e) of rule 41, but providing simply that “ the motion shall be made before trial” without specifying the conditions excusing the failure to make the motion before trial, and that ‘ ‘ the court in its discretion may entertain the motion at the trial” — thereby giving the court wide latitude to entertain the motion at the trial and prevent an injustice to defendants upon any showing of excuse for the delay, a broad provision more in keeping with the actual experience in the Federal, California and Illinois courts and the underlying policy; an added provision that “ the court in its discretion may defer consideration of the motion until the trial”; and a final provision authorizing the courts affected to make such further rules as they may deem necessary not inconsistent with the statutory rule — this last being in line with the joint legislative-court supervision over court procedure in this State (cf. Judiciary Law, § 83; Rules Civ. Prac., rule 2; Civ. Prac. Act, § 63, subd. 3).
It seems clear that if the motion for the return of the property illegally seized is made prior to indictment, which represents the formal commencement of the criminal proceeding, relief must be obtainable (Go-Bart Importing Co. v. United States, 282 U. S. 344); though, properly speaking the motion should *490 be regarded as, in effect, a complaint initiating an independent suit or proceeding (Lapides v. United States, 215 F. 2d 253).
Indeed, such, limited relief was apparently recognized in People v. Adams (176 N. Y. 351, 358), where the court drew a distinction between the raising of such an issue at the trial, which it held did not bar the introduction of evidence, otherwise relevant and competent, and the remedy for an alleged unlawful search and -seizure by means of an independent proceeding. Whatever the validity of the distinction, there are some early decisions in this State relying on it in granting relief, to defendants. (See, e.g., Matter of Both, 200 App. Div. 423; People v. Jakira, 118 Misc. 303.)
2. CONSIDERATIONS AFFECTING THE COURT OF GENERAL SESSIONS
Our present concern is with motions made after indictment. It is my opinion that in such case the practice of the particular court having jurisdiction thereof, which shall not be inconsistent with the general rule, should govern the manner and timing— but not, of course, the merits — of its consideration and disposition. That court being in the best position to assess its capacity to process before trial the motion and the hearing thereon generally necessary to determine the issue raised without prejudice to the right of other defendants in pending cases to a speedy trial, it should be given discretion to provide for the manner of presentation of such post-indictment motions and flexibility in handling them, adjusted to the problems to be anticipated in processing particular motions and to the current work of the court.
This court has power to make rules and regulations for the practice therein (Code Crim. Pro., § 55-a). Eule VIII of the rules of this court provides that all motions and ex parte applications shall be made in Part I, except motions and applications incidental to the trial of an action, which shall be made before the Judge presiding at the trial (and two other limited exceptions not here pertinent).
Pending enactment by the Legislature of procedural requirements relative to motions to suppress, and the adoption of rules thereunder by the courts, I must consider the proper manner of handling and disposition of these motions brought before me in Part I during this interim period.
It is my view that under present conditions and in the best interests of defendants themselves it would not be appropriate for the Judge in Part I to handle such motions where testimony to be given at a hearing is required to decide -them.
The nature and volume of the work in Part I precludes prompt attention to motions to suppress requiring the holding *491 of hearings, as shown by the following bare summary of the matters handled in that part: empaneling of Grand Juries in such numbers as needed in the court trying probably the most felony cases in the country; daily reports of work by Grand Juries consisting of filing indictments or dismissals and transfers to other courts, such as Special Sessions and the City Magistrates ’ Gamblers’ Court; arraignment for pleas; consideration of offers to plead guilty to crime of lesser degree; applications for fixing of bail; and for reduction of bail; review of reports of Psychiatric Division of court or Bellevue Hospital, occasionally resulting in holding of hearings; proceedings to hold material witnesses or to fix parole as to defendants offering to co-operate; extradition proceedings; sentences; a variety of motions, some of which, such as motions to inspect Grand Jury minutes and coram nobis applications, require considerable time to be spent in studying minutes and reviewing the complete record; and other miscellaneous business. It is obvious that this leaves little or no time for the Judge in Part I for holding hearings in connection with motions to suppress.
It should be noted that this court has eight trial parts, and that the annual business transacted covers almost 5,000 indictments found, in addition to dismissals, numerous motions and applications, including an ever-increasing number of coram nobis applications.
It seems to me that the most expedient method for handling these motions in this court would be to have the Judge in Part I determine such motions where there is no disputed isssue of fact or of credibility concerning the legality or illegality of the search and seizure and therefore, no need for a hearing. This would apply to cases where clear and convincing proof on that issue has already been given at a preliminary hearing in the Magistrates’ Court or where the motion papers and opposing affidavits raise no issues of fact but only issues of law.
All other motions which set forth facts raising substantial issues regarding an unlawful search and seizure and requiring a hearing should be made or referred to the Trial Judge. Where such a motion has been made in Part I and defendant has pleaded not guilty, the case should be noticed and assigned immediately for trial, to permit prompt consideration, particularly of those motions which, if granted, would require a dismissal of the indictment in view of the lack of other sufficient evidence to establish guilt. Failure to notice the case for trial promptly under these conditions should, in my view, be a factor which the court may consider on a subsequent motion to dismiss for failure of the speedy trial to which a defendant is entitled *492 (cf. People v. Prosser, 309 N. Y. 353). Motions requiring hearings Avould receive more prompt attention under this suggestion than by having the Judge in Part I handle all of these motions in addition to the usual motions, ex parte matters and proceedings presented to him in that part.
Actually, the suggestion that motions requiring a hearing be made or referred to the Trial Judge is consistent Avith rule VIII, AAdiich provides that motions ‘‘ incidental to the trial ’ ’ should be made to the Trial Judge.
The Trial Judge Avould take the motion under advisement in advance of the trial. He Avould have discretion to defer the hearing on the motion until that moment in the trial Avhen the evidence in question is attempted to be introduced. At that time he Avould conduct a voir dire examination outside the presence of the jury, as is frequently done in jury trials Avhen the Trial Judge must, in order to pass on the competency of evidence to which objection is taken, hear evidence to determine Avhether it should be admitted.
However, it is to be expected that the motion would ordinarily be heard and determined prior to trial, particularly where it appears that the motion, if granted, would be dispositive of the case, or that the hearing on the motion would be so protracted as to interfere with the orderly progress of the trial, or that it would not be fair to permit the District Attorney to refer to such evidence in his opening to the jury. Indeed, where the motion may be dispositive of the case, the Trial Judge would no doubt feel impelled to place the hearing on his calendar for immediate attention; or, if that is impossible, to transfer the case to another available and less (at the moment) busy part Avith the consent of the Judge of that part — a not uncommon practice in this court.
The Trial Judge would also have discretion, upon a showing of a reasonable excuse for failure to proceed by pretrial motion, to entertain the motion when made for the^first time at the trial.
Moreover, it is the Trial Judge aaOio can best determine whether the claim of illegality is a subterfuge employed merely to elicit the prosecution’s case before its submission to' the jury. (Nardone v. United States, 308 U. S. 338, 342, supra.) An additional consideration in some cases would be the convenience of witnesses and police officers in avoiding the necessity of repeated court appearances and the availability of the trial assistant more familiar with the circumstances involved than the pleading assistant of the District Attorney’s office.
*493 As indicated, the issue of the legality of the search and seizure, both as to the facts and the law, is for determination by the court and not the jury. (Steele v. United States, 267 U. S. 505, 511.) Evidence at a hearing before the court on the question of probable cause which is basic to the issue to be determined may consist of hearsay, knowledge of prior criminal activity, reasonable grounds for suspicion or information from a reliable source — different from the strict standards of legal evidence necessary to establish guilt. (See Brinegar v. United States, 338 U. S. 160, 172-176.)
The contention that the Trial Judge would be unduly influenced by the evidence of a nonlegal nature given at the hearing on the motion has no validity. Since we are here dealing only with jury trials, there is no more reason to fear that the Trial Judge will endeavor under these conditions to impose upon the jury his personal view of the facts than in the usual jury case. It must therefore be held that in a jury case it is immaterial which of the Judges of the court hears and determines motions to suppress.
The procedure suggested by me as appropriate to the practice and conditions of this court would be entirely consistent with the statutory rule discussed in the previous section of this opinion. Where there are no disputed issues of fact requiring a hearing, the motion may be made to and decided by the Judge in Part I. In all other cases the motion would be made or referred to the Trial Judge after a not guilty plea. Except in the rare instances when the motion would be deferred until the trial or entertained for the first time at the trial, it would be disposed of in advance of trial. Moulding the requirements of the rule to the necessities of this court would, in effect, retain all essential characteristics while granting a measure of flexibility in its application to the various types of motions having varying degrees of merit expected to be brought in large number in this court.
(3) CONSIDERATION OE THE INSTANT MOTION
This defendant moves for an order to inspect the Grand Jury minutes, for a further order to dismiss the indictment, and for a further order to suppress the evidence.
Defendant has been indicted for the crime of feloniously possessing a narcotic drug. Since the Grand Jury “ can receive none but legal evidence ” (Code Grim. Pro., § 249), inspection of the Grand Jury minutes alone will not serve to resolve the issue as to whether or not the evidence presented to it was lawfully obtained. (See People v. Atkins, N. Y. L. J., July 31, 1961, p. 5, col. 6, Marks, J.) The basic requirement of *494 “ probable cause ” which will justify a search and seizure can be supported at a hearing by other than “ legal evidence,” such as hearsay, knowledge of prior criminal activity, reasonable grounds for suspicion or information from a reliable source.
In this case, however, there was a preliminary hearing in the City Magistrates’ Felony Court at which evidence was adduced bearing on the issue of the alleged illegality of the search of defendant which resulted in the seizure of three paper bags containing a narcotic drug, possession of which is the basis of the indictment against him. The hearing having been held after the Mapp decision, the Magistrate was constrained on the record before him to grant the motion to suppress the evidence as to defendant’s possession of the drug and to dismiss the charge before him.
The testimony at the hearing reveals that the police officer had no search or arrest warrant, did not know defendant, had no confidential information regarding him, but for some undisclosed reason followed him for several blocks, then approached and identified himself as an officer, and when defendant “ started to ” take a brown paper bag out of his pocket, the officer forcibly took it as well as two other bags from his pockets.
In Rios v. United States (364 U. S. 253 [1960]), involving a similar fact pattern as to probable cause and arrest, it was claimed that the search was incident to a lawful arrest. The court, however, found no probable cause for arrest at the time that the officer approached defendant and held that nothing that happened thereafter (aside from the question in that case still to be determined of defendant’s alleged voluntary revealment of the contraband, not here relevant) could make that arrest lawful or justify a search as its incident. In People v. Defore (supra, p. 19) Judge Cardozo succinctly observed,
11 Means unlawful in their inception do not become lawful by relation when suspicion ripens into discovery.” An illegal search cannot be validated by what is seized. (United States v. Di Re, 332 U. S. 581.) “Under our system suspicion is not enough for an officer to lay hands on a citizen.” (Henry v. United States, 361 U. S. 98, 104.)
Here, too, the testimony discloses no probable cause for the search, nor for arrest at the time that the officer approached defendant. As the record stands, the officer appears to have acted on mere suspicion, which falls far short of probable cause. (See Brinegar v. United States, 338 U. S. 160, 175-177.) Since, then, there is in this case proof hearing on the issue of the illegality of the search, the motion may be decided without a further hearing.
*495 But I have noted that no opposing affidavit has been submitted by the District Attorney. As this type of motion and the procedure thereon is new to our courts, I will afford the District Attorney the opportunity to submit an affidavit setting forth any additional grounds for probable cause, if same are claimed to exist, and the nature of the proof in that respect which he is prepared to offer at a further hearing. Failing submission of a sufficient affidavit within one week from the date hereof defendant’s motion will be granted and an appropriate order may be settled on notice. If an affidavit is submitted which I find sufficiently raises the issue of probable cause to require a further hearing, the motion will be held and referred to the Trial Judge to be disposed of in accordance with the procedure set forth in the previous section of this opinion.
(Supplemental Opinion.)
In its decision the court held that defendant’s motion to suppress the evidence upon which the indictment was based and thereupon to dismiss the indictment would have to be granted unless an affidavit raising the issue of probable cause sufficiently to require a further hearing were submitted within one week from date thereof.
The court is now in receipt of an affidavit that, after discussion with the police officer of the facts surrounding defendant’s arrest, the People stand on the record and submit nothing additional in opposition to the motion.
Accordingly, in view of the analysis of the question and the review of the authorities in the decision, the court is constrained to grant defendant’s motion. Since, upon suppression of the evidence obtained by search and seizure in this case, there would be no legal evidence to support the indictment, it is ordered dismissed.