■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MAURICE ROTH, Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Harrington, J.), rendered August 26, 1986, convicting him of criminal sale of a controlled substance in the second degree, criminal sale of a controlled substance in the fourth degree, criminal possession of a controlled substance in the fourth degree, criminal possession of a controlled substance in the seventh degree and conspiracy in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

On May 10, 1985, Gerard Wren, a police informant, approached the codefendant Pinchus Glauber seeking to purchase cocaine. Glauber contacted the defendant at an apartment on Central Park South where an individual known as Rogers resided and, later that day, the defendant and Rogers went to Glauber's home to arrange a sale of cocaine to Wren. On May 16th, Wren drove Glauber to the Central Park South apartment where Glauber met with the defendant and Rogers. Pursuant to the defendant's instructions, Glauber told Wren the price for two kilos of cocaine would be $100,000, and when Wren refused to offer $70,000 as "up-front" money, the defendant offered to give Wren 130,000 Quaaludes as "collateral". This exchange was to take place on Friday, May 17, 1985, at the Garden City Hotel. The defendant and Glauber spent the night of May 16th at the Penta Hotel freebasing cocaine with several prostitutes.

The next day, May 17th, the defendant and Glauber traveled to Rogers' Central Park South apartment where Glauber observed 4 or 5 suitcases packed with Quaaludes in plastic bags. When Glauber told the defendant that Wren needed a couple of ounces as a sample, the defendant responded, "We will see how much we can get together" and, in the defendant's presence, Rogers gave Glauber one ounce of cocaine for Wren. A limousine transported Glauber and the defendant to the Garden City Hotel where they met with Wren and two undercover officers at around 3:30 P.M. Glauber gave the one-ounce sample to Wren and the defendant, who claimed to

have been freebasing cocaine for approximately 20 hours, then exited the limousine and opened the trunk to show the officers the Quaaludes, telling them that the coke would be available the next day. The arrest was then effected.

Once at the precinct the defendant stated that the limousine driver "had nothing to do with it" and offered to make a statement. Following *Miranda* warnings, a detective prepared a three-page statement which the defendant refused to sign. The detective stated that he had observed persons under the influence of cocaine on numerous occasions and the defendant was not, on May 17, 1985, intoxicated. His speech was normal, his eyes normal, and he appeared awake and alert, with a "confident swagger" in his stride.

Initially we note that suppression of the defendant's statement was properly denied. Although he claimed to be too intoxicated following his arrest to voluntarily waive his constitutional rights and maintained that the statement was taken from him following his request for counsel, these claims were disputed by the testimony of the police officers involved in the arrest. Moreover, intoxication does not by itself render a statement involuntary. Only if it were shown that the defendant was intoxicated to the degree of being unable to understand the meaning of his statements would the statements have been inadmissible *(People v Schompert,* 19 NY2d 300, *cert denied* 389 US 874). Since much weight is to be accorded to the determination of the hearing court whose findings are not to be set aside unless they are clearly erroneous *(People v Prochilo,* 41 NY2d 759; *People v Armstead,* 98 AD2d 726), we cannot conclude that the determination of the hearing court to credit the officers' testimony over that of the defendant and his expert was erroneous.

We do not agree with the defendant's argument that a sworn juror was improperly discharged for cause pursuant to CPL 270.15 (4) before the first witness was sworn. This juror clearly and unequivocally indicated to the court that she could not render an impartial verdict owing to her own use and use by her friends of cocaine. While the court did not inquire further as to the juror's ability to cast aside her bias, it offered both counsel the opportunity to question her. They declined to do so. The juror's statement that she had reflected all weekend and had concluded she could not be "fair about it"; was sufficient to satisfy the court that she should be excused.

Although the defendant correctly asserts that the right to present witnesses of one's own choosing is fundamental, the

admissibility and extent of expert testimony is addressed to the discretion of the trial court *(see, People v Cronin,* 60 NY2d 430; *People v Dorsey,* 125 AD2d 586, *lv denied* 69 NY2d 879). It is well settled that expert opinions which are contingent, speculative, or indicative that something is merely possible are lacking in probative force and are therefore inadmissible *(People v Miller,* 116 AD2d 595). In the case at bar, the expertise of the defendant's toxicology witness Bedansit was limited to the analysis of cocaine in body tissue and he admittedly had very limited firsthand observations of only "two to three" living patients under the influence of cocaine. In such a case it was not error for the trial court to exclude such testimony particularly in light of the relevant expert testimony of the defendant's intoxication through a physician, Dr. Greenfeld, with years of clinical experience with cocaine abusers.

Contrary to the defendant's assertion that his conviction of the sale of one ounce of cocaine to Wren was predicated solely upon the uncorroborated accomplice testimony of Glauber, the record reveals that his accessorial liability was sufficiently established through independent evidence. Although mere presence at the scene of a crime with knowledge of its perpetration is insufficient to constitute accessorial liability *(People v Karchefski,* 102 AD2d 856; *People v Reyes,* 82 AD2d 925), the People presented sufficient independent evidence to corroborate Glauber's testimony that the defendant and Rogers engineered the proposed sale of the two kilos of cocaine and furnished the one-ounce sample which was sold to Wren. The defendant admitted his presence at both Glauber's and Rogers' homes at the times Glauber testified the agreement to sell the cocaine was negotiated, and Glauber gave Wren the cocaine in the defendant's presence. The police officers who arrested the defendant testified that he opened the trunk, showing them the Quaaludes, and one officer stated that in response to his question of when he would have the cocaine the defendant replied, "I have good news. You will have the coke Saturday". Glauber testified that the defendant ordered the limousine and the driver stated he responded to the call to pick up "Maurice" (the defendant).

The policy underlying CPL 60.22 requiring independent proof to corroborate an accomplice's testimony is not to exclude to a moral certainty every hypothesis of innocence but merely to connect the defendant with the crime in such a way that the jury may reasonably be satisfied that the accomplice is telling the truth *(People v Glasper,* 52 NY2d 970; *People v*

*Daniels,* 37 NY2d 624). The evidence presented by the People was sufficient to provide the necessary corroboration of Glauber's testimony *(see, People v Sargente,* 133 AD2d 862; *People v Camacho,* 128 AD2d 717).

With respect to the defendant's claims of error in the jury charge, we note that the court delivered an extensive instruction as to the voluntariness of the defendant's statement and later gave a supplemental instruction as to a knowing waiver of one's constitutional rights. Although a defendant is entitled to a charge on the voluntariness of his statements and the burden of proof with respect to his assertion of his right to counsel rests with the People *(see,* 1 CJI[NY] 11.05, at 671; CPL 60.45 [2] [b] [ii]; 710.70; *People v Graham,* 55 NY2d 144), his failure to object or seek additional instructions constituted a failure to preserve the issue for appellate review *(see, People v Santiago,* 52 NY2d 865; *People v Dail,* 112 AD2d 442).

Although the court did not explicitly charge that a finding of guilt as to the conspiracy was, standing alone, insufficient to support a conviction for the substantive crime of criminal sale of a controlled substance, it charged each as separate and distinct offenses. Such a charge was proper *(People v Treuber,* 64 NY2d 817). With respect to the defendant's remaining contentions as to the errors contained in the charge, an examination of the record indicates they are without merit.

Finally, we note that it was not an abuse of discretion to permit inquiry as to the defendant's disbarment arising from conversion of $50,000 of former clients' funds and his management of a brothel, as these bad acts had direct bearing on the defendant's credibility and his propensity to place his interests above those of society *(see, People v Sandoval,* 34 NY2d 371; *People v Tucker,* 122 AD2d 237, *lv denied* 68 NY2d 918). Mangano, J. P., Brown, Rubin and Harwood, JJ., concur.