THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY L. CONKLIN, Appellant.

Fourth Department, February 3, 1989

**APPEARANCES OF COUNSEL**

*Kevin P. Bradley* for appellant.

*John Tunney* for respondent.

**OPINION OF THE COURT**

DENMAN, J.

Defendant appeals from a judgment convicting him, after a

jury trial, of criminally negligent homicide and sentencing him to 1⅓ to 4 years' imprisonment. Defendant was convicted of causing the death by suffocation of the 21-month-old daughter of his girlfriend. Defendant's primary contention on appeal is that the court erred in refusing to charge the jury with the responsibility of determining whether defendant's confession was "involuntarily made" (CPL 60.45), and thus to be disregarded, because it was "obtained by means of custody of the defendant in the absence of reasonable cause to believe that the defendant had committed any offense." Defendant's contention is that he was entitled to have the jury determine whether his Fourth Amendment rights were violated by police questioning. We hold that search and seizure issues are inappropriate for jury resolution and that the court properly refused to charge as requested by defendant.

The trial evidence, including the detailed oral and written statements of the defendant, established that defendant, age 19, was living with Ida May Campbell and her three children, including Elizabeth Johnson, the decedent. On July 18, 1986, Ida went to work and left the children with the baby-sitter, Hazel LaBar. Later that morning, defendant watched the children while LaBar went to the dentist. According to defendant's statements, Elizabeth got "cranky" and threw a "tantrum". Defendant grabbed her by the neck, spanked her, dropped her into her crib and held her down by the back of her neck and the small of her back until she "calmed down" and "stopped squirming". Approximately two hours later, after Campbell had returned home, defendant went to check on Elizabeth. When she didn't move, defendant summoned Campbell, who determined that the baby was blue. After unsuccessful attempts at resuscitation, the baby was taken to the hospital where she was pronounced dead.

An autopsy was performed on July 19 during which the police observed two small bruises at the base of Elizabeth's skull and a bruise at the base of her spine. That observation, together with the opinion of hospital personnel that the death was suspicious, caused police to conduct a homicide investigation. The police went to the home of defendant and Campbell later that day. They questioned Campbell and LaBar but defendant was not present. The police left a message that they would like to speak with defendant.

Defendant was driven to the police station by his father at approximately 3:30 P.M. on July 19. He was taken into a conference room, given his *Miranda* warnings, and questioned

by officers and an Assistant District Attorney. Following the initial 30-to-40-minute interview, during which defendant denied harming the child, the police left defendant alone in the conference room "to think it over". After a 15-to-20-minute interval, questioning was resumed for approximately 10 to 15 minutes at which time defendant made a series of inculpatory statements in which he admitted suffocating the child. Thereafter, defendant's oral statements were reduced to a writing which defendant signed. The police commenced taking defendant's written statement approximately two hours after his arrival at the police station and it was completed approximately two hours after that.

Following indictment, defendant moved to suppress his statements on the grounds that he was seized without probable cause, was not given adequate warnings, and was psychologically coerced into giving the statements. After conducting a combined *Huntley/Dunaway* hearing, the suppression court concluded, *inter alia,* that there had been no Fourth Amendment violation. Specifically the court found that, in attempting to question defendant, the police left word for him to go to the police station at his convenience but made no further attempts to find or arrest him. The court found that defendant voluntarily appeared at the police station, was not taken into custody, waived his *Miranda* rights and consented to speak about the incident. The court further found that, after the initial interview, defendant was left alone in the conference room while officers spoke to defendant's father, who was waiting in a vehicle across from the police station. Defendant's father was offered the opportunity to speak with his son and to review the taped interview, but declined to do so. Questioning then resumed, at which point defendant admitted suffocating the child. Based on testimony establishing that, up to the point at which defendant made the admission, he was free to leave, the court concluded that nothing occurred during the questioning that converted his voluntary appearance into a custodial detention.*

Defense counsel renewed the Fourth Amendment claim at trial, cross-examining the officers in an attempt to establish that defendant was in custody when he gave his statement. Invoking the so-called "second bite" on the issue of voluntariness provided by the interplay between CPL 710.70 (3) and

---

* Defendant has not appealed from the court's order denying his motion to suppress his statement on Fourth Amendment grounds.

60.45 (2) (b) (ii), defendant requested that the trial court instruct the jury on various aspects of voluntariness, including the instruction that defendant's statements should be disregarded if the jury found that such statements were obtained from defendant "in violation of such rights as the defendant may derive from the constitution of this State or of the United States". Defendant requested that the court charge as follows: "A statement is obtained in violation of rights derived from the constitution of this State or of the United States when it is obtained by means of custody of the defendant in the absence of reasonable cause to believe that the defendant had committed any offense * * * A defendant is in custody when a reasonable person in the defendant's position would not believe he or she is free to leave." Defense counsel argued that "[i]t is for the jury to determine whether there was reasonable cause to believe that the Defendant committed any offense" and "whether he was in custody before he made the allegedly inculpatory statements." The court declined to so charge, but did, however, charge the jury at length, in accordance with CPL 60.45 and the pattern charge contained in 1 CJI(NY) 11.01 *et seq.*, concerning the conventional factors bearing on voluntariness, including defendant's *Miranda* protections.

It was not error for the court to refuse to submit the Fourth Amendment issues to the jury. Defendants are provided a "second bite" on the issue of voluntariness by virtue of the following statutory provisions:

"§ 710.70. Motion to suppress evidence; orders of suppression; effects of orders and of failure to make motion. * * *

"3. A motion to suppress evidence made pursuant to this article is the exclusive method of challenging the admissibility of evidence upon the grounds specified in section 710.20, and a defendant who does not make such a motion before or in the course of a criminal action waives his right to judicial determination of any such contention.

"Nothing contained in this article, however, precludes a defendant from attempting to establish at a trial that evidence introduced by the people of a pre-trial statement made by him should be disregarded by the jury or other trier of the facts on the ground that such statement was involuntarily made within the meaning of section 60.45. Even though the issue of the admissibility of such evidence was not submitted to the court, or was determined adversely to the defendant upon motion, the defendant may adduce trial evidence and

otherwise contend that the statement was involuntarily made. In the case of a jury trial, the court must submit such issue to the jury under instructions to disregard such evidence upon a finding that the statement was involuntarily made."

"§ 60.45. Rules of evidence; admissibility of statements of defendants. * * *

"2. A confession, admission or other statement is 'involuntarily made' by a defendant when it is obtained from him:

"(a) By any person by the use or threatened use of physical force upon the defendant or another person, or by means of any other improper conduct or undue pressure which impaired the defendant's physical or mental condition to the extent of undermining his ability to make a choice whether or not to make a statement; or

"(b) By a public servant engaged in law enforcement activity or by a person then acting under his direction or in cooperation with him:

"(i) by means of any promise or statement of fact, which promise or statement creates a substantial risk that the defendant might falsely incriminate himself; or

"(ii) in violation of such rights as the defendant may derive from the constitution of this state or of the United States."

Relying on the broad language of CPL 710.70 (3), defendant contends that he was entitled to have the jury determine whether his confession was obtained in violation of his right to be free from arrest absent probable cause. We decline to adopt the statutory interpretation advanced by defendant and conclude that search and seizure issues are not within the contemplation of the provisions of CPL 710.70 (3) and 60.45 (2) (b) (ii). We read 60.45 (2) (b) (ii) as authorizing jury consideration of only those constitutional claims traditionally associated with the determination of the voluntariness of a confession, i.e., *Miranda* and Fifth Amendment (self-incrimination and due process) claims or claims arising under analogous provisions of the State Constitution *(see, People v Graham,* 55 NY2d 144; *People v Taylor,* 135 AD2d 202, 204, *lv denied* 71 NY2d 1034; *People v Murray,* 130 AD2d 773, 775, *lv denied* 70 NY2d 958; *People v Sutton,* 122 AD2d 896). It may also be that a defendant is entitled to have the jury consider a claim that his statements were taken in violation of his right to counsel *(compare, People v Roth,* 139 AD2d 605, 608, *lv denied* 72 NY2d 866; *and People v Casiano,* 123 AD2d 712, 713, *lv denied* 69 NY2d 744, *with People v Medina,* 138 Misc 2d 653); never-

theless, since that claim is not before us, we express no opinion on the issue. Fourth Amendment claims, however, even those seeking suppression of an illegally seized confession, have generally been regarded as distinct from voluntariness issues *(see, e.g., Dunaway v New York,* 442 US 200, 219). Even that portion of the CJI commentary which advocates submitting Fourth Amendment issues to the jury recognizes that a statement is not "involuntarily made" within the meaning of CPL 60.45 merely because it is taken in violation of defendant's Fourth Amendment rights. The text of the CJI states: "Thus, a statement in all respects 'voluntarily made' (CPL § 60.45) is nevertheless inadmissible if it is the product of an unlawful arrest or detention or any other violation of the Fourth Amendment." (1 CJI[NY] 11.00, at 647.) The CJI commentary is a correct statement of law, but that legal proposition has nothing to do with whether search and seizure issues must be submitted to the jury.

We do not find persuasive that portion of the CJI text suggesting that determination of disputed facts underlying a Fourth Amendment claim be submitted to the jury (1 CJI[NY] 11.00, at 650-651). Significantly, neither defendant nor the CJI cites any case in support of the proposition, and our research reveals none. New York cases decided in the aftermath of *Mapp v Ohio* (367 US 643 [1961]), which imposed the suppression remedy upon the States, uniformly held that the legality of a search and seizure, both as to the facts and the law, was to be determined by the court, not the jury *(People v Gentile,* 20 AD2d 412, 413; *People v Gonzales,* 31 Misc 2d 486, 493; *People v Du Bois,* 31 Misc 2d 157, 161). Although those cases were decided prior to the enactment of CPL 60.45 and 710.70 (L 1970, ch 996), no subsequent case takes a contrary view. Other jurisdictions that have considered the question have held that search and seizure issues, both factual and legal, are for the court and not the jury, and many of those cases reach that result notwithstanding the existence of second-bite rules akin to that of CPL 710.70 (3) *(see, e.g., Ford v United States,* 273 US 593, 605; *Steele v United States,* 267 US 505, 511; *United States v Ariza-Ibarra,* 605 F2d 1216, 1226, *after remand* 651 F2d 2, *cert denied* 454 US 895; *Bretti v Wainwright,* 439 F2d 1042, 1047, *cert denied* 404 US 943; *Ramirez v United States,* 294 F2d 277, 283; *Simmons v United States,* 206 F2d 427, 429-430; *Hamilton v State,* 185 Ga App 749, 365 SE2d 542, 543; *Erhlich v State,* 42 Md App 730, 403 A2d 371, 376; *Commonwealth v Brady,* 357 Mass 213, 257 NE2d 465, 466,

and cases cited therein; *State v Krogness*, 238 Ore 135, 388 P2d 120, 128, *cert denied* 377 US 992; *State v Harris*, 265 Minn 260, 121 NW2d 327, 334-335, *cert denied* 375 US 867; *State v Easter*, 174 Neb 412, 118 NW2d 515, 522; *People v Gorg*, 45 Cal 2d 776, 291 P2d 469, 472).

In holding that CPL 60.45 (2) (b) (ii) does not require submission of search and seizure issues to the jury, we do not suggest that the Legislature "inadvertently broadened" the second-bite rule to include Fourth Amendment considerations *(see, People v Graham, supra,* at 153 [Wachtler, J., concurring]). A similar argument pertaining to a claimed *Miranda* violation was rejected by the Court of Appeals in *Graham.* We simply hold that a statement is not "involuntarily made" within the meaning of CPL 60.45 merely because it is obtained in violation of the Fourth Amendment *(cf., People v Medina, supra,* at 661 [questioning whether that could have been the Legislature's intent in defining an "involuntarily made" statement]). The Fourth Amendment has but a tangential relation, if any, to traditional concepts of involuntariness under the Self-Incrimination and Due Process Clauses of the Fifth Amendment. We are unable to discern a legislative intent to require jury consideration of search and seizure considerations because, unlike the circumstances under which a statement is obtained from a defendant, Fourth Amendment considerations lack relevance and materiality with respect to the jury's ultimate determination *(see, Erhlich v State, supra; People v Gorg, supra).*

Whether a confession is involuntary in the traditional sense is essential to the jury's function in ascertaining its evidentiary value and, hence, bears on defendant's guilt or innocence. The same is true where it is claimed that a confession is constructively involuntary as the result of a *Miranda* violation, since the *Miranda* prophylaxis is designed to assure that a confession is voluntary in the traditional sense. In contrast, the integrity of evidence obtained as the result of an allegedly illegal seizure—the weight to be given to such evidence by the jury—is not affected by the reasonableness of police action *(see, Erhlich v State, supra; People v Gorg, supra).* Even where, as here, the allegedly illegally seized evidence consists of a confession, whether police have probable cause has no impact on defendant's mental condition and plays no proper part in the jury's determination concerning the probative weight to be accorded his confession. Permitting defendant to make a second attack on search and seizure issues

would create a needless and unacceptable risk that the jury's attention will be diverted from the ultimate issue of guilt or innocence. Unlike issues of actual or constructive voluntariness, which typically require limited proof of the circumstances under which defendant's statement was taken, search and seizure issues frequently involve proof of *sui generis,* protracted and complex factual situations. To require a prosecutor to establish at trial that there was probable cause for a defendant's arrest would confuse the jury by shifting its focus from defendant's guilt or innocence to police conduct and knowledge at various stages of their investigation. Moreover, to the extent that probable cause is sometimes based on police awareness of uncharged or prior crimes committed by defendant or upon hearsay information, the People might well be unable to establish probable cause for defendant's arrest without such inadmissible evidence; conversely, if admitted, such evidence would be unduly prejudicial and undoubtedly require reversal *(People v Gorg, supra; see, e.g., Simmons v United States, supra; cf., United States v Ariza-Ibarra, supra).*

There are additional problems with requiring a court to instruct the jury on search and seizure principles. In comparison with Fifth Amendment and *Miranda* principles, which can be rather easily stated *(see,* 1 CJI[NY] 11.00-11.10), search and seizures issues are resolved within the framework of a comprehensive, complicated and relatively fluid body of law. The jury is not equipped with the legal expertise necessary to determine whether a defendant has been illegally seized, and pertinent instructions may be beyond the jury's capacity to apply *(see, Erhlich v State, supra,* 403 A2d, at 377). Moreover, such instructions might cause the jury to confuse the standards for evaluating the reasonableness of police conduct with those for determining a defendant's guilt *(see, Simmons v United States, supra).*

*People v Hamlin* (71 NY2d 750) supports our conclusion by implication. In that case, defendant sought a "second bite" on the admissibility of tangible evidence seized by police as a result of an allegedly involuntary confession. Defendant requested that the jury be instructed not to consider any physical evidence derived from his statements if it found them involuntary. After describing the provision mandating jury determination of voluntariness, the court noted, "The Legislature enacted no similar provision authorizing juries to consider the admissibility of tangible evidence" *(People v Hamlin, supra,* at 761). The court then approvingly cited a law review

article for the proposition that no State Legislature had enacted a provision authorizing jury consideration of search and seizure issues *(People v Hamlin, supra)*. We interpret the court's observation in *Hamlin* as reflecting its view that CPL 60.45 and 710.70 do not require jury consideration of search and seizure issues. There is no basis for distinguishing this case from *Hamlin* merely because the fruit of the allegedly illegal seizure in that case was tangible evidence whereas here it consists of defendant's statement. In either case, the admissibility of evidence obtained as a result of the allegedly illegal seizure was a matter exclusively for the court, and in neither case did the court err in refusing to submit the Fourth Amendment issue to the jury.

We have considered defendant's remaining contention and conclude that it is without merit.

Accordingly, the judgment of conviction should be affirmed.

DILLON, P. J., CALLAHAN, GREEN and LAWTON, JJ., concur.

Judgment unanimously affirmed.