■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY A. DAWSON, Appellant.—Mikoll, J. Appeal from a judgment of the County Court of Ulster County (Vogt, J.), rendered February 25, 1989, upon a verdict convicting defendant of the crime of murder in the second degree.

The questions presented on this appeal from defendant's conviction for murder in the second degree are whether County Court (1) properly denied defendant's motion to suppress certain statements he made to the police and a taped conversation he had with a friend who was wired by the police, (2) erred in failing to have the jury determine whether defendant requested an attorney and in failing to charge manslaughter in the first degree as a lesser included offense, and (3) properly permitted defendant's wife to testify against him. We find no error in County Court's rulings on these issues. The judgment of conviction should therefore be affirmed.

Early in the morning of July 12, 1988 the body of 19-year-old Anna Kithcart was discovered in a wooded area behind Kingston Hospital in the City of Kingston, Ulster County. The body had been badly battered and mutilated. The letters "KKK" had been scratched onto her abdomen and on both of her thighs. She had sustained massive head injuries and a piece of glass protruded from the right side of her neck. The police investigation revealed that she had been seen leaving a bar with defendant sometime after midnight of July 12, 1988. Police officers proceeded to defendant's residence at about 11:30 A.M. on July 13, 1988 to interview him and they were told that defendant was not at home. The officers then told the occupant to ask defendant to visit the police station to talk with them. Shortly thereafter, defendant was informed of the police request and arrived at the police station at about 12:30 P.M. that same day, accompanied by his wife. Both defendant and his wife gave statements to the police. Defendant indicated that he had been at the bar where the victim was last seen, but that he had not seen her. When defendant was asked to sign a written statement, he indicated that he would not do so. When defendant was asked whether he would take a polygraph test, he asked if he could discuss the test with a lawyer. Defendant was then given a telephone book and left alone for about 10 minutes. When one of the police officers reentered the room and spoke with defendant about whether he had called an attorney, defendant indicated that he had done so, but he did not give the attorney's name. Defendant was again given the telephone book, but he could

not give the name of the attorney. He then stated that he did not want to take a polygraph test.

Todd Schleede, a friend of defendant, gave police a statement to the effect that defendant had admitted to him that he murdered the victim and afterward had washed her blood from his clothes in a neighbor's swimming pool. Schleede agreed to assist the police by wearing a body wire and engaging defendant in a conversation about the murder. Schleede was outfitted with the wire and was able to engage defendant in a conversation about the event outside defendant's residence. Defendant was immediately arrested at the conclusion of the conversation and given his *Miranda* warnings. Defendant indicated that he understood his rights by nodding his head. Defendant was then taken to police headquarters for further questioning.

Defendant was indicted for two counts of murder in the second degree by a Grand Jury. Defendant then moved to suppress evidence seized under a search warrant as well as all statements he made. County Court denied the motion and, at trial, the prosecution presented scientific evidence, including hair, blood and fiber test results, along with the testimony of Schleede, the police officers and the taped conversation. Defendant was convicted of murder in the second degree and sentenced to a term of imprisonment of 25 years to life. This appeal followed.

We reject defendant's first argument that the suppression motion was improperly denied because his voluntary presence at the police station on July 13, 1988 became custodial at the moment defendant stated that he had not seen the victim the night she died. At the time in question, the police were merely in the investigatory stage and defendant was only one of a number of people who might have seen the victim on the night that she was found. Defendant's response that he had not seen the victim did not change his presence at the police station from voluntary to custodial.

Defendant's next contention, that his presence at the police station on July 13, 1988 otherwise became custodial rendering his statements involuntary, is also without merit. Defendant was neither placed under arrest nor advised at any time that he could not leave the station, and, in fact, he never asked the police if he could leave, despite contentions to the contrary. The evidence demonstrates that a reasonable person, innocent of any crime and in defendant's circumstances, would have assumed that he was free to leave the police station *(see, People v Yukl,* 25 NY2d 585, 589, *cert denied* 400 US 851;

*People v Rodney P.,* 21 NY2d 1, 9). Whether a defendant is in custody is essentially a factual determination for the trier of facts and should be afforded great deference *(see, People v Baird,* 111 AD2d 1044, 1045, *lv denied* 66 NY2d 761; *People v Hartley,* 103 AD2d 935, 935-936, *affd* 65 NY2d 703). Since defendant was not in custody on July 13, 1988 and his statements were voluntary, the failure to inform him of his *Miranda* rights before questioning was not improper. Defendant also asserts that he was in custody during his conversation with Schleede on July 16, 1988 because police were nearby. However, proof indicates that defendant was not then in police custody and had not yet been arrested.

We also reject defendant's contention that the taped conversation that he had with Schleede should have been suppressed because his 6th Amendment right to counsel was violated at the time that he allegedly requested an attorney at the police station. Defendant had not unequivocally requested an attorney during the questioning which took place at the police station on July 13, 1988. Thus, his right to counsel was not triggered *(see, People v Fridman,* 71 NY2d 845, 846; *see also, People v Cunningham,* 49 NY2d 203, 210). Further, defendant voluntarily waived his constitutional rights when, after being read his *Miranda* rights following his arrest on July 16, 1988, he indicated that he understood those rights and then proceeded to talk with the police *(see, People v Davis,* 75 NY2d 517, 522-523). Defendant's further argument that the taped conversation was inaudible and thus should have been suppressed is not supported by the evidence and is therefore rejected. There is no showing that County Court abused its discretion in allowing the taped conversation into evidence at the hearing *(see, People v Warner,* 126 AD2d 788, 789).

Defendant next contends that County Court erred in refusing to submit to the jury the question of whether he had requested an attorney prior to being questioned by the police. The issue of whether defendant invoked his 6th Amendment right to an attorney before police questioning was a legal question for the court and not the jury to resolve *(see, People v Medina,* 146 AD2d 344, 350-351; *People v Conklin,* 145 AD2d 20).

Defendant also contends that County Court should have submitted the offense of manslaughter in the second degree to the jury as a lesser included offense. This issue has not been preserved for our review since defendant failed to either request such a charge or object to the charge *(see,* CPL 300.50

[1]; *see also, People v Holzer,* 52 NY2d 947, 948) and we see no basis to reverse on this issue in the interest of justice.

Finally, we find no error in allowing defendant's wife to testify against him at trial that he had arrived home wet on the morning of July 12, 1988. The act of coming home wet was not a confidential communication which would not have been made but for the marriage relationship *(see,* CPLR 4502 [b]; *People v Wilson,* 64 NY2d 634, 636). In any event, defendant appeared in public wet and, thus, the act cannot be characterized as a confidence.

Judgment affirmed. Mahoney, P. J., Weiss, Mikoll, Levine and Harvey, JJ., concur.