People v Parker (2024 NY Slip Op 00783)

People v Parker

2024 NY Slip Op 00783

Decided on February 14, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 14, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
JOSEPH J. MALTESE
LARA J. GENOVESI
DEBORAH A. DOWLING, JJ.

2019-10949
 (Ind. No. 782/18)

[*1]The People of the State of New York, respondent,
v
Mark Parker, appellant.

Patricia Pazner, New York, NY (Brian Perbix of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Nancy Fitzpatrick Talcott, and Mariana Zelig of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Gene Lopez, J.), rendered September 5, 2019, convicting him of criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.
ORDERED that the judgment is reversed, on the law and the facts, that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials is granted, and the matter is remitted to the Supreme Court, Queens County, for further proceedings on the indictment.
On March 22, 2018, multiple gunshots were fired in a public housing development in Queens. Keon Odom was shot once, and the defendant was shot three times. At the hospital, the defendant made statements to the police in which he admitted that another individual shot him and that the defendant shot back once with a chrome gun.
Prior to trial, the defendant moved, inter alia, to suppress his statements on the ground that they were involuntarily made. At the suppression hearing, Detective James Zozzaro testified that he attempted to speak with the defendant on the day of the shooting at the hospital, but the defendant was in critical condition and unable to speak. The defendant was placed in a medically induced coma. Two days later, the detective attempted to speak with the defendant in the morning or the afternoon, but the defendant was undergoing surgery. At approximately 5:55 p.m. on the same day, the detective returned and questioned the defendant in the intensive care unit. The detective did not speak with any medical personnel before going into the defendant's room. At some time prior, the defendant had been arrested in connection with this incident, and he was handcuffed to the hospital bed.
At the suppression hearing, the People submitted a video which depicted the defendant lying in a hospital bed with his right arm handcuffed to the hospital bed and his left arm bandaged and immobilized from the earlier surgery. He had several tubes in his body and an oxygen mask for breathing. The detective asked the defendant whether he could hear him, and in reply, the [*2]defendant asked the detective to get a nurse to lower his bed because he was in pain. The detective stated that he did not think "they would allow it" because the defendant needed to be upright in order to answer the detective's questions. The detective stated that he would call for a nurse after they were done talking. Immediately after denying this assistance, the detective read the defendant his Miranda warnings (see Miranda v Arizona, 384 US 436) and the defendant responded that he understood and that he would speak to the detective. At the suppression hearing, the detective testified that the defendant then gave an oral statement, and agreed to make a videotaped statement. In the video statement, the defendant remained handcuffed to the hospital bed, and his oxygen mask had been removed. Despite the fact that no nurse was present and the defendant's arms were bound, when asked at the suppression hearing who removed the defendant's oxygen mask, the detective replied that he did not know whether it was the defendant or medical personnel, but he recalled that it was removed because the detective could not understand what the defendant was saying when the oxygen mask was in place.
The defendant testified at the suppression hearing that he did not recall the interview at the hospital. He had been shot in the elbow, the leg, and the lower back, and underwent three surgeries. He testified that he was in pain and drowsy from painkillers while at the hospital. The defendant denied having possessed a gun or having fired any shots.
Defense counsel argued that the defendant's statements should be suppressed as involuntary in light of the defendant's medical condition at the time of the interview, and that he expressed that he was in pain and was denied medical care by the detective. The Supreme Court denied suppression of the defendant's statements, determining that the defendant validly waived his Miranda rights.
At trial, the People relied upon the defendant's statements as proof of his guilt of criminal possession of a weapon in the second degree. The People also submitted the defendant's medical records, which showed that on March 24, 2018, at approximately 5:05 p.m., which was less than one hour prior to the detective's questioning of the defendant, the defendant was unable to participate in a medical evaluation of the surgery to his elbow due to residual anesthesia/sedation. The defendant's medical records also indicated that he was receiving oxycodone/morphine, among other medications, at the time of the police questioning.
The defendant put in issue the voluntariness of his statements to the police and requested that the jury be instructed on the voluntariness of his statements. The Supreme Court instructed the jurors on the factors to consider in deciding whether a statement is voluntary, but failed to instruct them to disregard the defendant's statements if they found that the statements were involuntarily made. The jury found the defendant guilty of criminal possession of a weapon in the second degree.
"It is the People's burden to prove beyond a reasonable doubt that statements of a defendant they intend to rely upon at trial are voluntary" (People v Thomas, 22 NY3d 629, 641; see People v Guilford, 21 NY3d 205, 208). "To do that, they must show that the statements were not products of coercion, either physical or psychological, or, in other words, that they were given as a result of a free and unconstrained choice by their maker" (People v Thomas, 22 NY3d at 641 [alterations, citation, and internal quotation marks omitted]; see Miranda v Arizona, 384 US at 448). Statements made in custodial interrogation will not be considered voluntary unless the defendant made a knowing, voluntary, and intelligent waiver of his or her Miranda rights (see People v Dunbar, 24 NY3d 304, 314). "[A]ny evidence that the accused was threatened, tricked, or cajoled into a waiver will . . . show that the defendant did not voluntarily waive his [or her] privilege" (Miranda v Arizona, 384 US at 476). "Therefore, the use of a defendant's statement offends due process where his or her 'will has been overborne and his [or her] capacity for self-determination critically impaired'" (People v Aveni, 100 AD3d 228, 237, quoting Culombe v Connecticut, 367 US 568, 602; cf. CPL 60.45[2][a] [a statement is "'involuntarily made' by a defendant" where, among other possibilities, the defendant is impaired by a physical condition "to the extent of undermining (the defendant's) ability to a make a choice whether or not to make a statement"]).
Here, the People failed to establish that the defendant voluntarily waived his right against self-incrimination. At the time of the interrogation, the defendant had recently been in a medically induced coma, had come out of surgery only hours before, and his condition "was still sufficiently serious that he was in the intensive care unit" (Mincey v Arizona, 437 US 385, 398). The defendant "was lying on his back on a hospital bed, encumbered by tubes, needles, and breathing apparatus" when the detective approached him (id. at 399). At the time of the police questioning, the defendant was drowsy from painkillers administered to him, his right arm was handcuffed to the hospital bed, and his left arm was bandaged and immobilized from the earlier surgery. The defendant was positioned upright so that the detective could question him, and when the defendant expressed that this caused him pain and requested medical assistance, the detective denied the request and coerced the defendant by stating that he would obtain medical assistance after he had questioned the defendant. Immediately thereafter, the defendant purported to waive his Miranda rights. "It is hard to imagine a situation less conducive to the exercise of a rational intellect and a free will," as the defendant was "at the complete mercy of [the detective], unable to escape or resist the thrust of [the] interrogation" (id. at 398-399 [internal quotation marks omitted]). Further, the detective secured the defendant's videotaped statement by removing the defendant's oxygen mask. Although the detective testified at the suppression hearing that he could not recall who had removed the mask, and suggested that it was the defendant or a nurse, his testimony and the video evidence established that no nurse was present during the interrogation, and the defendant's arms were incapacitated and he would not have been able to remove his own mask. It is apparent from the suppression record "that [the defendant's] statements were not 'the product of his free and rational choice'" (id. at 401, quoting Greenwald v Wisconsin, 390 US 519, 521). Accordingly, the Supreme Court should have granted that branch of the defendant's omnibus motion which was to suppress his statements.
Although the above error alone requires reversal and remittal for a new trial, the Supreme Court committed two additional errors, each of which also would warrant a new trial. Where, as here, the defendant has placed in issue the voluntariness of his statements to law enforcement officials, "the court must submit such issue to the jury under instructions to disregard such evidence upon a finding that the statement was involuntarily made" (CPL 710.70[3]; see People v Graham, 55 NY2d 144). The court erred in failing to instruct the jurors to disregard the defendant's statements if they found that the statements were involuntarily made. Reversal would be warranted due to the incomplete charge (see People v Slide, 76 AD3d 1106, 1109-1110).
The Supreme Court also erred in denying the defendant's Batson challenge (see Batson v Kentucky, 476 US 79). Pursuant to Batson, courts employ a three-step test to determine whether a party has used peremptory challenges to exclude potential jurors for an impermissible discriminatory reason (see People v Hecker, 15 NY3d 625, 634). "At step one, the movant must make a prima facie showing that the peremptory strike was used to discriminate; at step two, if that showing is made, the burden shifts to the opposing party to articulate a non-discriminatory reason for striking the juror; and finally, at step three, the trial court must determine, based on the arguments presented by the parties, whether the proffered reason for the peremptory strike was pretextual and whether the movant has shown purposeful discrimination" (People v Bridgeforth, 28 NY3d 567, 571; see Hernandez v New York, 500 US 352, 358-359).
Here, during the second round of voir dire, the defendant made a Batson challenge, asserting that the prosecutor had impermissibly exercised peremptory challenges to exclude four prospective jurors who were African American and male. As to those prospective jurors, the prosecutor asserted that each was an unemployed college student, living at home with family members, and lacking the requisite life experience needed to decide the issues in the case. However, the prosecutor did not strike another prospective juror, who was similar in age and was also living at home while attending college, who did not fall into the identified class.
"Where a peremptory challenge is based upon a prospective juror's employment, the concerns regarding the employment must be related to the factual circumstances of the case, and the qualifications of the juror to serve on that case" (People v Smith, 266 AD2d 570, 571; see People v Bell, 126 AD3d 718, 719; People v Campos, 290 AD2d 456, 457). Here, the prosecutor did not [*3]relate the employment status of the four prospective jurors to the facts of the case, and no such relationship is apparent from the record (see People v Bell, 126 AD3d at 719-720; People v Campos, 290 AD2d at 457). Furthermore, the record demonstrates that the articulated reasons were not applied equally to exclude other prospective jurors (see People v Johnson, 199 AD3d 1017, 1019; People v Bell, 126 AD3d at 720). Under these circumstances, the prosecutor's explanations as to the four prospective jurors were pretextual, and the defendant is entitled to a new trial on this ground (see People v Johnson, 199 AD3d at 1019; People v Bell, 126 AD3d at 720; People v Campos, 290 AD2d at 457).
The defendant's contention regarding the constitutionality of Penal Law § 265.03(3) is unpreserved for appellate review (see CPL 470.05[2]; People v Cabrera, _____ NY3d _____, 2023 NY Slip Op 05968) and we decline to reach it in the exercise of our interest of justice jurisdiction.
The defendant's remaining contention need not be reached in light of our determination that reversal is warranted.
BRATHWAITE NELSON, J.P., MALTESE, GENOVESI and DOWLING, JJ., concur.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court