# SUPREME COURT OF THE UNITED STATES

KEVIN MCCARTHY, SUPERINTENDENT,
ELMIRA CORRECTIONAL FACILITY *v.*
PEDRO HERNANDEZ

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 25–748.   Decided June 22, 2026

PER CURIAM.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes strict limits on federal courts' power to grant habeas relief to a prisoner convicted in state court. District courts and courts of appeals have sometimes chafed under these restraints, and when they have strayed too far from the modest role that AEDPA prescribes, we have summarily reversed their decisions. See, *e.g.*, *Klein* v. *Martin*, 607 U. S. 213 (2026) (*per curiam*). We must do the same today.

The Second Circuit ordered habeas relief in this case based on its holding that a state-court decision was "contrary to" and "involved an unreasonable application" of *Missouri* v. *Seibert*, 542 U. S. 600 (2004), because the decision approved a trial judge's refusal to tell a jury how to apply *Seibert*—or, more precisely, how to apply what the Second Circuit understood to be the holding in that case. 28 U. S. C. §2254(d)(1). But *Seibert* said nothing about jury instructions. For this reason and others, the Second Circuit exceeded the role that AEDPA prescribes.

I

A

This case concerns a tragic event that once captured the Nation's attention. On May 25, 1979, 6-year-old Etan Patz left his family's apartment in lower Manhattan to take a bus to school. Before boarding the bus, he stopped to buy a

drink at a bodega where respondent Pedro Hernandez, then 18 years old, was working. Patz never got on the bus and was never seen alive again. Despite a vigorous search, law enforcement could not locate him or find evidence of his fate. For the next 20 years, authorities investigated several suspects, but they were never prosecuted, and the case went cold.

It was revived in 2012, when Hernandez's brother-in-law reported that Hernandez had made statements about his involvement in Patz's disappearance and suspected murder. At that time, Hernandez was living in southern New Jersey, and detectives took him to the Camden County (New Jersey) Prosecutor's Office (CCPO). They began questioning him there without first administering a *Miranda* warning, see *Miranda* v. *Arizona*, 384 U. S. 436 (1966), and Hernandez, a man with a low IQ and a history of mental illness, eventually confessed to strangling Patz and dumping his body in an alley behind the bodega.

The detectives then read Hernandez his *Miranda* rights. He waived them and made a second, videotaped confession. While still at the CCPO, Hernandez also confessed to his wife, Rosemary, and his daughter, Becky.

Detectives drove Hernandez to the New York County District Attorney's Office, where he received another *Miranda* warning, waived his rights, and gave a second videotaped confession, this time to an assistant district attorney.

Hernandez continued for years to confess to Patz's murder. While in pretrial custody, for example, he confessed to a psychiatrist. He also told this psychiatrist that he had confessed to the crime in 1979 at a prayer meeting and in the 1980s to his ex-wife. And he confessed the crime repeatedly to a second psychiatrist while awaiting trial.

B

New York charged Hernandez with intentional murder, kidnapping, and felony murder. The first trial ended in a

hung jury, and a second trial began in 2016. Hernandez moved to suppress his statements to the detectives and the assistant district attorney, but the trial court denied the motion. It ruled that Hernandez was not in custody at the CCPO before he received his *Miranda* warning and that he had knowingly and voluntarily waived his *Miranda* rights at the CCPO and the district attorney's office before he made his later videotaped confessions.

Under New York law, however, the trial court's decision not to suppress those confessions did not prevent the defense from asking the jury to disregard them. New York law requires a trial court to instruct a jury to disregard a pretrial statement if the jury finds it to have been "involuntarily made." N. Y. Crim. Proc. Law Ann. §710.70(3) (West 2026). And a statement is "involuntarily made" within the meaning of this provision if it was obtained in violation of the defendant's state or federal constitutional rights, §60.45(2)(b)(ii), or the right established in *Miranda*, see *People* v. *Graham*, 55 N. Y. 2d 144, 149–150, 432 N. E. 2d 790, 793 (Ct. App. 1982). The trial court accordingly instructed the jury on voluntariness, custodial interrogation, *Miranda* warnings, and *Miranda* waiver. App. to Pet. for Cert. 73a–78a, n. 2 (App.).

But New York law does not require a trial court to instruct a jury on whether an initial involuntary confession taints later confessions and thus imposes an obligation to disregard them. See *People* v. *Smith*, 209 App. Div. 2d 1005, 1006, 619 N. Y. S. 2d 990, 991 (1994); *People* v. *Rabady*, 28 App. Div. 3d 794, 795, 812 N. Y. S. 2d 884, 884–885 (2006); *People* v. *Martinez*, 63 App. Div. 3d 859, 860, 880 N. Y. S. 2d 492, 493 (2009); *People* v. *Medina*, 146 App. Div. 2d 344, 350–351, 541 N. Y. S. 2d 355, 358–359 (1989). The trial court therefore did not instruct the jury to decide whether Hernandez's post-warning confessions were sufficiently attenuated from his first, pre-warning confession. App. 192a (noting that the court did not instruct the

jury "how to consider Hernandez's post-*Miranda* confessions depending on what the jury determined with respect to the pre-*Miranda* confession" given at the CCPO).

Nonetheless, after the jury retired to decide on a verdict, it sent the trial court a note seeking guidance on attenuation:

> "We the jury request that the Judge explain to us whether if we find that the confession at CCPO before the *Miranda* rights was not voluntary, we must disregard the two later videotaped confessions at CCPO and the DA's office, the confessions to Rosemary and Becky Hernandez, and the confessions to the various doctors." *Id.*, at 281a.

The parties disagreed on the correct response. The State argued that the answer should be "no," while the defense maintained that the correct answer was "yes." The trial judge agreed with the State and succinctly advised the jury that the answer to its question was "no." *Id.*, at 307a.

In an exchange with counsel outside the presence of the jury, the trial court explained that although New York law requires a jury to disregard confessions that it finds were "involuntarily made" in the sense noted above, state law does not empower a jury to assess whether a later confession is fatally tainted by an earlier, "involuntary" confession. So the trial court did not think it proper to "instruc[t]" the jury "on attenuation" when it was "not their function" to consider that issue. *Id.*, at 301a–302a.

The jury found Hernandez guilty of kidnapping and felony murder, and the trial court sentenced him to imprisonment for 25-years-to-life.

New York's intermediate appellate court (the Appellate Division, First Department) affirmed. *People* v. *Hernandez*, 181 App. Div. 3d 530, 122 N. Y. S. 3d 11 (2020). It agreed with the trial court that Hernandez had not been in custody before he received the first *Miranda* warning and that after

receiving the warnings he had knowingly and voluntarily waived his *Miranda* rights. The appellate court also ruled that the trial judge had responded to the jury note in accord with state law. *Hernandez*, 181 App. Div. 3d, at 532–533, 122 N. Y. S. 3d, at 14–15 (holding that the response was "correct" and "meaningful . . . on the subject of the voluntariness of confessions"). And it concluded that the verdict would have been the same even if the trial judge had instructed the jury on attenuation.

The New York Court of Appeals denied leave to appeal, *People* v. *Hernandez*, 35 N. Y. 3d 1066, 152 N. E. 3d 1178 (2020) (Table), and we denied certiorari, *Hernandez* v. *New York*, 592 U. S. 1319 (2021).

### C

Hernandez filed an application for a writ of habeas corpus in Federal District Court. He argued that the Appellate Division had violated clearly established federal law in rejecting his *Miranda* arguments and in its ruling on the trial court's response to the jury note. That response, Hernandez maintained, itself violated clearly established federal law by failing to explain to the jury the rule that Justice Kennedy adopted in his opinion concurring in the judgment in *Missouri* v. *Seibert*, 542 U. S. 600.

*Seibert* addressed the constitutionality of an interrogation tactic under which police question a suspect in custody without providing a *Miranda* warning and then, after eliciting a confession, provide a *Miranda* warning and ask the suspect to repeat the confession. The Court ruled that the use of this tactic in that case violated federal law. Writing for a four-Justice plurality, Justice Souter opined that the use of the tactic had undermined the protection that *Miranda* was designed to provide and that the confession given after the tardy *Miranda* warning was therefore inadmissible. Justice Kennedy concurred in the judgment, arguing that a post-warning confession obtained through a

"deliberate" two-step strategy "predicated upon violating *Miranda*" is inadmissible unless law enforcement takes "specific, curative steps" to attenuate it from the pre-warning confession. 542 U. S., at 621.

The District Court referred Hernandez's application to a Magistrate Judge, who issued a 130-page report recommending denial. The District Court adopted the report in full and denied Hernandez's habeas application. The District Court saw no ground under AEDPA for granting relief based on Hernandez's *Miranda* arguments. Yet the District Court was troubled by the trial judge's response to the jury note. The District Court acknowledged that the response was "technically correct." App. 80a. It also acknowledged that "[n]othing in *Seibert* discusses how trial courts should respond to jury notes of any sort," *id.*, at 88a, because *Seibert* concerned a judge's resolution of a suppression motion, and "only a court can determine admissibility," App. 92a. All the same, the District Court ruled that *Seibert* was "relevant" to juries, not only to judges, and that *Seibert* "required" the trial court to "t[ell the jury] about attenuation" in order to "protect [Hernandez's] constitutional rights." App. 89a, 92a. Still, the District Court, like the Appellate Division, concluded that the trial court's failure to explain attenuation to the jury was harmless.

The District Court granted a certificate of appealability on the issue of the trial court's response to the note, and a panel of the Second Circuit reversed based on *Seibert*. *Hernandez* v. *McIntosh*, 146 F. 4th 142 (2025). The panel stated that Justice Kennedy's opinion in *Seibert* set out a binding rule of federal law and that the trial court needed to explain the rule and its consequences in its response to the jury's note. Unlike the state courts, the Magistrate Judge, and the District Court, the panel found the trial court's "no" answer to be "manifestly inaccurate." 146 F. 4th, at 159. In the panel's view, that error warranted habeas relief under 28 U. S. C. §2254(d)(1) because the

response was contrary to and involved an unreasonable application of *Seibert*. 146 F. 4th, at 159–160. That was so, according to the panel, because the "rule laid out in *Seibert* is relevant not only to a court making admissibility determinations" under the Constitution but also to juries deciding voluntariness under New York's code of criminal procedure. *Id.*, at 158. The "thrust" of *Seibert*, the panel said, "is the same" in either context. 146 F. 4th, at 158. And the trial court's misapplication of *Seibert* was "so erroneous," the panel reasoned, "as to deny Hernandez due process." 146 F. 4th, at 157. The panel then ruled that no fair-minded jurist could conclude that the error was harmless.

The panel stressed that its holding was based on the premise that the trial court had "misstate[d] or misappli[ed] . . . *federal constitutional law* in [the] jury instruction," not on the premise that the trial court had "misstated state law." *Id.*, at 160, n. 9. Indeed, the panel acknowledged "[a]t the outset" that AEDPA does not empower federal courts to "'reexamine state-court determinations on state-law questions.'" *Id.*, at 157 (quoting *Estelle* v. *McGuire*, 502 U. S. 62, 67–68 (1991)).

The panel remanded with instructions to grant the application and to order Hernandez's release unless the State gave him a new trial.

## II
### A

As relevant here, a federal court may grant habeas relief on a claim that a state court has resolved on the merits only if that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." §2254(d)(1). Only the holdings of this Court clearly establish federal law. *White* v. *Woodall*, 572 U. S. 415, 419 (2014). "[S]tate-court determinations on state-law questions" are "no part of a federal court's habeas review of a state conviction." *Estelle*, 502 U. S., at 67–68. AEDPA

instead allows a federal court to correct only "'extreme mal-functions'" in the resolution of federal issues by the criminal justice systems of the sovereign States. *Harrington* v. *Richter*, 562 U. S. 86, 102 (2011). A decision is "contrary to" our holdings if it applies a rule that "'contradicts'" them. *Lafler* v. *Cooper*, 566 U. S. 156, 173 (2012). And a decision "unreasonabl[y] appli[es]" our holdings when the state court "blunder[s] so badly" that no fair-minded jurist could agree with it. *Mays* v. *Hines*, 592 U. S. 385, 392 (2021) (*per curiam*).

## B

The Appellate Division's decision neither contravened nor unreasonably applied any holding of this Court.

First, Hernandez had no federal right to have the jury evaluate the lawfulness of his confessions after the trial court admitted them. Unlike New York law, the Federal Constitution does not "require that both judge and jury pass upon the admissibility" or voluntariness "of evidence when constitutional grounds are asserted for excluding it." *Lego* v. *Twomey*, 404 U. S. 477, 490 (1972). So no federal law, much less any clearly established federal law, required the trial court to instruct the jury on the grounds for suppression set out in *Miranda* or *Seibert*.

Second, the rule embraced by Justice Kennedy in *Seibert* does not disturb that proposition. Although we have never held that Justice Kennedy's opinion sets out the holding that courts must follow under *Marks* v. *United States*, 430 U. S. 188 (1977), we may assume without deciding—in line with the Second Circuit's precedent, which the parties do not contest—that it does. See *United States* v. *Capers*, 627 F. 3d 470, 476 (CA2 2010).* Even if Justice Kennedy's

_____

*Most Courts of Appeals agree with the Second Circuit on this score. But the Sixth Circuit holds that the *Seibert* plurality, not Justice Kennedy's concurrence, supplies the controlling rule. *United States* v.

opinion clearly established a rule of federal law cognizable under §2254(d), that opinion established nothing about a jury's determination of a confession's legality. *Seibert* concerned a trial court's ruling on a suppression motion, not a jury's assessment of attenuation. 542 U. S., at 604, 606 (opinion of Souter, J.). We have never applied *Seibert* in any other procedural context. See *Bobby* v. *Dixon*, 565 U. S. 23, 26, 29–32 (2011) (*per curiam*). And neither the courts below nor the parties have identified any decision of this Court holding that *Seibert* affects a jury's consideration of a confession that a court has admitted.

Third, our case law does not support the Second Circuit's conclusion that the trial judge's response to the jury's note violated Hernandez's right to due process. See *Estelle*, 502 U. S., at 71–73; *Cupp* v. *Naughten*, 414 U. S. 141, 147 (1973). We have never held that the Due Process Clause, or any other provision of the Federal Constitution, requires a trial court to explain to a jury an issue that the jury is not required to decide.

Hernandez correctly declines to argue that *Seibert* required the trial court to instruct the jury on attenuation in its initial charge. App. 93a ("Hernandez does not argue that *Seibert* compelled the trial court to instruct the jury on attenuation in its initial charge"). As Hernandez concedes, *Seibert* did not require the trial court to instruct the jury on attenuation in its response to the jury note either. Brief in Opposition 22. That conclusion does not change merely because the jury "focused on this question" or because the legality of the confessions was "an issue central to the trial." *Hernandez*, 146 F. 4th, at 157, 162. Those contingent features of Hernandez's prosecution could not, as the panel seemed to think, turn *Seibert*'s discussion of circumstances in which a judge should suppress a confession into clearly

---

*Woolridge*, 64 F. 4th 757, 762 (2023). We need take no side in that dispute today.

established federal law about an issue that juries must "fully consider." 146 F. 4th, at 161, n. 9.

Hernandez counters that it is New York law, not federal law, that "vest[s] juries with th[e] responsibility" to assess attenuation, and that *Seibert* "must control the jury's consideration" of the issue for that reason. Brief in Opposition 22. Yet the trial court ruled that New York law does not vest juries with the responsibility to assess attenuation, App. 301a–302a, the Appellate Division held that the trial court's response was "correct" under and otherwise compliant with New York law, *Hernandez*, 181 App. Div. 3d, at 532–533, 122 N. Y. S. 3d, at 14–15, and a federal habeas court may not second-guess state-court interpretations of state law, *Estelle*, 502 U. S., at 67–68. In any event, Hernandez admits that a defendant "is not entitled to a free-standing jury instruction on attenuation" under New York law, Brief in Opposition 22, and neither he nor the Second Circuit has explained how a federal court could nonetheless grant habeas relief on the premise that due process turns attenuation into a jury issue simply because the jury asks about it.

The Second Circuit exceeded its authority in holding that Hernandez is entitled to relief under §2254(d). The panel's opinion appears to reflect serious doubt about the reliability of Hernandez's confessions, but AEDPA does not allow a federal habeas court to disturb a state-court conviction based on such an evaluation of the evidence.

*          *          *

No clearly established federal law required the trial court to instruct the jury about the rule that Justice Kennedy adopted in *Seibert*. Because the panel erred in holding otherwise, we grant the State's petition for a writ of certiorari, reverse the judgment of the Second Circuit, and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SOTOMAYOR, JUSTICE KAGAN, and JUSTICE JACKSON would deny the petition for a writ of certiorari.